738 So.2d 148 (1999)
Patricia FREEMAN, et al.
v.
Louis HUTSON, et al.
No. 99-C-1438.
Court of Appeal of Louisiana, Fourth Circuit.
June 23, 1999.
*149 Cadell A. Thomas, Cadell A. Thomas & Associates, New Orleans, LA, Counsel for Plaintiffs-Respondents.
John W. Waters, Jr., Bienvenu, Foster, Ryan & O'Bannon, New Orleans, LA, Counsel for Defendant-Relators.
Court composed of Judge WILLIAM H. BYRNES III, Judge MIRIAM G. WALTZER and Judge PATRICIA RIVET MURRAY.
WALTZER, Judge.
Relator, Glazer Steel Corporation, seeks supervisory review of the trial court's denial of its motion for summary judgment. According to plaintiffs' petition, their car was struck on 3 July 1997 at 10:30 a.m. by a car driven by Louis Hutson, in the course and scope of his employment by Glazer. The petition alleges that Hutson's vehicle belonged to Glazer and Hutson was on a mission for Glazer at the time of the accident.[1] It alleges Glazer's negligence consisted in allowing an incompetent person to drive their vehicle; failing to supervise the operation of their vehicle; any and all other acts of negligence developed during discovery. Plaintiffs also allege that the accident took place on Glazer's premises.
Respondent filed no evidence in response to relator's motion. The relevant facts are not in dispute and are set forth in sworn testimony submitted by Glazer in support of its motion.
The following facts are established in the deposition of Jay Glazer, relator's President at the time of the accident:
a. At the time of the accident, Hutson was employed by Glazer as an inside salesperson; at that time, Glazer's outside sales persons were David Broussard and Mario Gianni.
b. During the course of Hutson's tenure, he never had occasion to use his personal car to make an outside sales call for Glazer.
c. Hutson took orders from Jay Glazer or Billy Davenport.
d. On the day of the accident, Hutson asked him for permission to go to the bank; this trip had nothing to do with his work at Glazer and did not benefit Glazer in any way; he did not stop off or do anything for Glazer coming or going from the bank.
e. Hutson's job did not require him to have a car or to bring a car to work with him.
f. Glazer did not pay Hutson to go to the bank; he went on his lunch hour, when he could do whatever he wanted.
*150 The following facts are established in the deposition of Louis Hutson:
a. Returning to work from the bank, he was parked on the right hand side of the street headed in the downtown direction, waiting for the traffic to clear ahead of him and behind him, so that he could make a U-turn to the other side of the street and park in a better position. The respondents' vehicle was headed downtown on Tchoupitoulas. The accident occurred at 10:30 a.m. directly in front of Glazer.
b. He was a salaried inside sales employee at the time of the accident.
c. He left work on the morning of the accident (payday) to deposit his paycheck at Bank One on Louisiana Avenue. He was going for himself alone, and did not make any deposits for Glazer.
d. Although he had used his car in the past when he called on customers in a previous position as an outside salesman, it had been some time before the accident that he had gone on an outside sales call for Glazer.
e. Glazer did not tell him which bank to use and did not tell him to make the deposit. Glazer did not discipline him because he was in the accident. Glazer did not reimburse him for mileage going to the bank. He made no sales calls while going to or from the bank.
f. He did not receive an allowance from Glazer for use of his car. Glazer had nothing to do with his selection of or payment for the car.
The sworn statement of Lolita Rebouche, Glazer's assistant secretary and treasurer establishes that Glazer did not pay Hutson for mileage for 1995, 1996, 1997 or 1998.
Respondents argued below that Hutson's trip to the bank at 10:30 a.m. saved his employer time he would have lost in the pre-4th of July crowds at noon; however, they introduced no countervailing affidavits or deposition testimony in support of this argument.
The parties acknowledge that Glazer can be liable to respondents only if it can be established that Hutson was in the course and scope of his employment at the time of the accident. Our Civil Code provides for this vicarious employer liability for damage occasioned by the employee in the exercise of the functions in which the employee is employed. La.C.C. art. 2320. Planiol notes that when the harsh rule of vicarious employer liability is applied to persons engaged in industry or commerce, the employer receiving profit for himself should support the risks of the enterprise, among which are accidents due to maladroitness of the agent. M. Planiol, Traite Elementaire de Droit Civil, Vol. 2, Part 1, No. 911. He notes that it is necessary that the act causing the damage be committed by the agent in the exercise of the function in which he is employed. Thus, masters are not responsible for the faults or the offenses committed by their servants outside their service. Furthermore, it does not suffice that the act be committed at a time and in a place where the agent was in the service of his employer. M. Planiol, supra at No. 911B.
The Louisiana Supreme Court instructs us that this vicarious liability arises only where the employee's tortious conduct was so closely connected in time, place and causation to his employment duties as to be regarded a risk of harm fairly attributable to the employer's business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer's interest. LeBrane v. Lewis, 292 So.2d 216, 218 (La.1974). There, the court noted that the increasing trend is to test the employer's liability in tort by criteria similar to those used in applying the "arising out of and in the course of employment" test in workers' compensation cases. LeBrane, supra at fn. 4.
More recently, the court found a genuine issue of material fact as to course and *151 scope where a rig employee was involved in an accident while returning to work from a restaurant. The employee worked a 12 hour shift, seven days on and seven days off. During these shifts, he ate "on the run." He received $12 a day for food. The court held:
Generally, an employee is outside the course of employment until he reaches the employer's premises. However, payment of travel expenses can place an employee in employment status from the beginning of his travel until the end.... An exception to the rule that employees are not in the course of employment going to and from work is recognized when transportation is furnished as an incident of employment, either through a vehicle, a conveyance and driver, or payment of expenses.... When an employer pays expenses and the trip in question is employment connected, an employee is in the course and scope of employment while away from his work place.... An employee is acting within the course and scope of his employment while on a job connected mission which the employer had reason to expect would be performed.... Among the factors to be weighed in determining an employer's responsibility for the tort of an employee are: "the time, place and purpose of the act in relation to service of the employer, the relationship between the employee's act and the employer's business ... and the reasonable expectation of the employer that the employer would perform the act." [Citing Reed v. House of Decor, Inc. 468 So.2d 1159, 1161 (La.1985)]
Michaleski v. Western Preferred Cas. Co., 472 So.2d 18, 20-21 (La.1985).
In that case, the court found that at the time of the accident the employee was returning from a necessary trip for himself and a co-worker to eat; the journey was necessitated by his employment, since all the men had to leave their rig site to purchase food. The court found that the employer anticipated the necessity of this type of absence, because, unlike Glazer, it compensated the employees with a per diem for food and gasoline expenses, required them to obtain meals away from their rig site and furnished them an allowance for that purpose. The employee's accident was caused by his exhaustion from his 12 hour shift, a risk of harm the court found to be reasonably attributed to the employer's business.
Appellate courts review summary judgments de novo, using the same criteria applied by trial courts to determine whether summary judgment is appropriate. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180, 1182.
The amended article 966 of the Louisiana Code of Civil Procedure substantially changed the law of summary judgment. Under the prior jurisprudence, summary judgment was not favored and was to be used only cautiously and sparingly. The pleadings and supporting documents of the mover were to be strictly scrutinized by the court, while the documents submitted by the party in opposition were to be treated indulgently. Any doubt was to be resolved against granting the summary judgment, and in favor of trial on the merits. The jurisprudential presumption against granting the summary judgment was legislatively overruled. The amendment to La.C.C.P. art. 966 levels the playing field between the parties, with the supporting documentation submitted by the parties to be scrutinized equally and the removal of the overriding presumption in favor of trial. Under the amended statute, the initial burden of proof remains with the mover to show that no genuine issue of material fact exists. However, under La.C.C.P. art. 966(C), once mover has made a prima facie showing that the motion should be granted, the burden shifts to the non-moving party to present evidence demonstrating that material factual issues remain. Once the motion for summary judgment has been properly supported by mover, the failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion. The amendment to La.C.C.P. art. 966 brings Louisiana's *152 standard for summary judgment closely in line with the federal standard under Fed. Rule Civ.Proc. 56(c). Hayes v. Autin, 96-287 (La.App.3 Cir. 12/26/96); 685 So.2d 691, 694, writ denied, 97-0281 (La.3/14/97), 690 So.2d 41. The summary judgment law was amended by La.Acts No. 483 of 1997 to incorporate the Hayes analysis.
The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of actions such as this. The procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966 A.(2). A summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966 B. The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. La. C.C.P. art. 966 C(2).
An adverse party to a supported motion for summary judgment may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided by law, must set forth specific facts showing that there is a genuine issue of material fact for trial. La.C.C.P. art. 967; Townley v. City of Iowa, 97-493 (La.App. 3 Cir. 10/29/97), 702 So.2d 323, 326.
Applying these factors, we find the relator presented undisputed facts establishing a prima facie case that Hutson's trip to the bank was solely for Hutson's personal purposes. He was not required to go to the bank nor was he compensated for the use of his car or awarded a mileage allowance. He and his supervisor agreed that he did no business for Glazer while on the personal mission. We are reluctant to impose liability under these circumstances to punish an employer who accedes to an employee's request to leave the premises on personal business. We find respondents' suggestion that somehow Glazer was benefited by allowing Hutson to take care of his banking at a time when the bank was less busy than at lunchtime to be unsupported by any evidence. This suggestion does not create a genuine issue of material fact.
Therefore, we grant relator's application for supervisory review. Having considered the materials submitted by relator in support of his motion for summary judgment and the fact that no countervailing proof was offered by respondents, who have the burden of proof at trial, we reverse the judgment of the trial court and grant relator's motion for summary judgment.
WRIT GRANTED. JUDGMENT REVERSED. SUMMARY JUDGMENT GRANTED.
NOTES
[1] It is undisputed that Hutson was driving his personally owned vehicle at the time of the accident.