LOVE, Judge.
Plaintiffs, Royal Street Grocery, Inc., The Abbey Bar, Inc., Crescent City Meat Company, Inc., Sarah A. Brand, Mary Ann Hack, Turbo The Clown, John Q. Cheese Head and Joan Q. Chowder Head appeal the trial court’s judgment granting summary judgment in favor of Entergy New Orleans. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY

Plaintiffs, Royal Street Grocery, Inc., The Abbey Bar, Inc., Crescent City Meat Company, Inc., Sarah A. Brand, Mary Ann Hack, Turbo The Clown, John Q. Cheese Head, and Joan Q. Chowder Head, individually and as purported representatives of others similarly situated, filed a class action petition against Entergy New Orleans, Inc. (“ENO” or “Entergy”) on January 21, 1998 seeking class certification and alleging damages against ENO resulting from a power outage in the French Quarter in the early morning hours of January 25, 1997, the Lnight preceding Superbowl Sunday, January 26, 1997. Electrical service was interrupted to various parts of the French Quarter for fifty (50) minutes.
Entergy maintained that the outage was caused by an act of vandalism at its Claiborne Substation, which is located at Ely *122 sian Fields and the Mississippi River. The substation supplies electrical service to approximately 5,500 customers in the French Quarter.
The plaintiffs claimed that the outage affected around 5,400 customers and Superbowl tourists, entertainers, merchants and vendors involved in the pre-Superbowl activities. They filed a class action seeking damages for loss or inconvenience caused by the outage under five legal theories: (1) breach of contract; (2) negligence per se (alleged noncompliance with zoning laws); (3) negligence; (4) strict liability (an alleged defect in the substation); and (5) equity. The plaintiffs summarized their claims that ENO was liable under two scenarios: (1) the blackout resulted from a system overload; and/or (2) the blackout resulted from an easily anticipated, foreseeable, preventable occurrence: crime in the area.[1]
Entergy moved for summary judgment on May 11, 1999, prior to the determination of class status, arguing that it was not liable for an isolated, criminal act directed to the Claiborne Substation. The court informally bifurcated the matter to decide the motion for summary judgment prior to dealing with the issue of class certification.
In the summary judgment motion, ENO asserted that it breached no duty to the plaintiffs and that the plaintiffs failed to demonstrate any evidence showing that a genuine issue of fact existed. Plaintiffs opposed the motion and the court, on laMay 28, 1999, heard the first round of arguments on the motion. The court held its ruling in abeyance until expert opinions were submitted by both parties regarding the Claiborne Substation’s compliance with the governing Nation Electric Safety Code (“NESC”).
Subsequent to the May 1999 hearing, discovery proceeded with some discord. On July 27, 1999, the plaintiffs moved to compel and, simultaneously, also moved to continue the summary judgment hearing, which had been re-set for further argument on October 15, 1999. After hearing argument on the motion to compel, the court postponed for two months the hearing on summary judgment, setting the hearing for December 17, 1999.[2] The plaintiffs did not request another continuance for purposes of furthering discovery.
The second hearing on Entergy’s motion for summary judgment was held on December 17, 1999, and the court took the matter under advisement. On February 1, 2000, the district court issued its judgment in favor of Entergy with a well-reasoned opinion dismissing the plaintiffs’ case. The court concluded: “Entergy is not legally responsible for the consequences of a brief service interruption that resulted from an unforeseeable act of vandalism.” The court, relying upon the unrefuted affidavit testimony of Frederick M. Brooks, an expert electrical engineer, and the court’s own review of the NESC codal provisions, determined that “the Claiborne Substation complied in all respects with the 1941 edition of the NESC and was surrounded by appropriate fencing (ie., seven-foot fence).” The court |4also stated that “[t]he current NESC allows the facili *123 ty to stay in existence in accordance with the code in effect at the time it was built.” Applying Posecai v. Wal-Mart Stores, Inc., 99-1222 (La.11/30/99), 752 So.2d 762, brought to the court’s attention by the plaintiffs, the court observed that the “record demonstrates the lack of the existence, frequency and similarity of prior incidents of crime committed by third party vandals at the Claiborne Substation.” Accordingly, the court granted Entergy’s motion for summary judgment. The plaintiffs timely appealed.

DISCUSSION

Appellants assert three assignments of error: (1) they were denied adequate discovery; (2) they met their burden of proof precluding summary judgment (i.e., prior criminal activity in the area surrounding the substation); and (3) the court failed to apply the correct standards for foreseeability and the imposition of duty (i.e., the court should have applied the modern version of the NESC and the continuing obligation standard enunciated in Weaver v. Valley Elec. Membership Cooperative, 24,261-CA (La.App. 2 Cir. 3/31/93), 615 So.2d 1375).
Appellee rebuts by arguing that the dismissal did not occur until two years after the plaintiffs’ suit had been filed and eight months after Entergy moved for summary judgment; thus, the plaintiffs had more than ample time for appropriate discovery. Moreover, the plaintiffs only requested a continuance once and, at that time, the court granted their request. They neither asked for additional time or presented an affidavit identifying the additional discovery they allegedly needed.
Further, although the jurisprudence has held that plaintiffs must establish a pattern of conduct at the particular business’s location to establish that business’s liability, the plaintiffs continued to press for discovery concerning approximately 152,000 other Entergy facilities spread throughout a four-state area, which the trial judge refused to allow. The location at issue, Claiborne Substation in New Orleans, had no pattern of vandalism and complied with all relevant codal provisions. Based on the record evidence, Entergy asserts that the district court applied the correct standards and duty analysis to the instant case.
The trial court’s discretion in discovery matters is vast. See Succession of Manheim, 98-2051 (La.App. 4 Cir. 4/21/99), 734 So.2d 119, 125, writ denied, 99-1861 (La.10/8/99), 751 So.2d 218. Absent an abuse of discretion, an appeal court should not reverse a trial court’s discovery ruling. Id.; see also Laburre v. East Jefferson Gen. Hosp., 555 So.2d 1381, 1385 (La.1990).
Additionally, summary judgment is favored when the moving party demonstrates that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. La.Code Civ. Proc. art. 966B. The favored procedure is designed to secure the just, speedy and inexpensive determination of actions. Micele v. CPC of La., Inc., 98-0044 (La.App. 4 Cir. 3/25/98), 709 So.2d 1065. The appellate court reviews the judgment de novo. Freeman v. Hutson, 99-1438 (La.App. 4 Cir. 6/23/99), 738 So.2d 148, 151.
The Supreme Court in Posecai set forth the principles governing this case and supports Entergy’s argument that it is entitled to judgment as a matter of law. The court stated: “Determining when a crime is foreseeable is therefore a critical inquiry.” Adopting a balancing test, the court explained that “[t]he most important factor to be considered is the existence, frequency and similarity of prior incidents of crime on the premises ...” Posecai, 752 So.2d at 768 (emphasis added). The district court was correct in its application of *124 the prevailing law as it relates to the facts presented in this case.
I «CONCLUSION
Therefore, we affirm the district court’s grant of Entergy’s motion for summary judgment for the reasons set forth by the district court, thereby dismissing the plaintiffs’ petition. In light of this determination, it is unnecessary to reach the issue of class certification.
AFFIRMED.

. According to the record, Entergy contended that the vandal threw pieces of metal wire over the fence surrounding the substation and onto the substation grounds, which came into contact with the energized bus work of the substation and triggered a protective shutdown.

. In the meantime, the plaintiffs filed a writ application to this court to stay the proceedings; i.e., the final briefing and argument on Entergy’s motion for summary judgment. This court denied the writ application and motion to stay on November 23, 1999. The Louisiana Supreme Court also denied writs.