832 So.2d 1103 (2002)
Whitney DABNEY, Jr.,
v.
Todd P. PLAISANCE, Fay L. Cohn and/or Robin & Cohn Seafood Distributors, Inc. and State Farm Mutual Automobile Insurance Company.
No. 2002-CA-0710.
Court of Appeal of Louisiana, Fourth Circuit.
December 4, 2002.
Rehearing Denied January 7, 2003.
*1105 Ford T. Hardy, Jr., New Orleans, LA, for Plaintiff/Appellant.
John C. Overby, Brian C. Bossier, Erin H. Boyd, Jason T. Little, Blue Williams, L.L.P., Metairie, LA, for Defendant/Appellee.
(Court composed of Judge STEVEN R. PLOTKIN, Judge MIRIAM G. WALTZER, Judge TERRI F. LOVE).
STEVEN R. PLOTKIN, Judge.
Plaintiff, Whitney Dabney, appeals a lower court judgment granting a motion for summary judgment in favor of defendant, Traveler's of Illinois ("Travelers"), dismissing plaintiff's UM claim on the basis of a waiver of UM coverage executed by Traveler's insured, Magnolia Marketing Company ("Magnolia"). Plaintiff also appeals the lower court's denial of its own motion for summary judgment seeking a declaration that the UM waiver is invalid. For the following reasons, the judgment granting defendant's motion for summary judgment and dismissing plaintiff's UM claim is affirmed.
Facts and Proceedings Below
On June 18, 1998, plaintiff was involved in an automobile accident while driving a truck owned by his employer, Crown Beverage Co., Inc. ("Crown"). Plaintiff was within the course and scope of his employment with Crown at the time of the accident. Based upon the injuries and death allegedly sustained as a result of the accident, plaintiff sued several defendants, including Travelers, alleging a UM claim against Travelers.
Travelers issued a commercial automobile liability policy to Magnolia for the 1998-99 policy year. Plaintiff's employer, Crown, was a named insured under the policy. However, the policy contains a rejection of uninsured/underinsured motorist coverage.
The rejection of UM coverage was executed on December 16, 1997, by Mr. Al Janusa of Magnolia. Mr. Janusa was the secretary/treasurer of Magnolia. One of his duties was to obtain insurance for the company; a task he performed for the past thirteen years.
The waiver form itself was a pre-printed form prepared by Mr. Kenny Newberger, an insurance agent working with Magnolia. The pre-printed form, which was signed by Mr. Janusa, appeared as follows:
Uninsured Motorist-"Bodily Injury
Uninsured motor vehicles include 1) Motor vehicles for which there is no liability
insurance 2) Motor vehicles for which the available limits for liability insurance is
not enough to pay the full amount of damages (uninsured motor vehicle) or 3) Hit
and run vehicles.
In accordance with Louisiana statutes, Uninsured Motorist insurance which
provides coverage for damages for bodily injury which the insured may be
entitled to recover from the owner or operator of an uninsured motor vehicle,
must be provided at the limits equal to the policy's bodily injury liability limits.
You do have the option to reject this coverage or select limits which are lower
*1106
than the bodily injury limits on your policy, but not less than the minimum
financial responsibility limits set forth by the State of Louisiana.
Please indicate your desired options by checking the appropriate box and signing
below:
[] 1. Insured motorist coverage limits other than my policy's bodily injury
 liability limits: $________________ each accident; or
 $_________________ each person, $_________________ each accident
X 2. I hereby reject uninsured motorist bodily injury coverage.
If you sign below and/or pay any premium, you have evidenced your actual
knowledge and understanding of the availability of these benefits and limits, as
well as the benefits and limits you have selected.
_______________________________ _______________________________
Signature of Named Insured Date
_______________________________ _______________________________
Agent Date
Although the rejection form was a preprinted form prepared by Mr. Newberger and signed by Mr. Janusa, Mr. Janusa testified that the pre-printed form was prepared as a result of collaboration between himself and Mr. Newberger. Mr. Janusa testified that, in this particular case, Mr. Newberger sent Mr. Janusa a blank form with no pre-printed "x", whereby Mr. Janusa sent the form back to Mr. Newberger with instructions as to how to prepare the form. Mr. Newberger then prepared the above form pursuant to those instructions.
Plaintiff filed a motion for summary judgment seeking to have the UM rejection form declared invalid. At the same time, Travelers filed a motion for summary judgment seeking to have plaintiff's UM claim dismissed based on the rejection form.
On September 5, 2001, the trial court, holding that the UM rejection form was valid and enforceable, granted Travelers' motion for summary judgment and dismissed plaintiff's UM claims. Plaintiff now appeals that decision.
Plaintiff urges the following issues for review. First, plaintiff argues that the language in the rejection form was insufficient to provide the insured an opportunity to make a "meaningful selection" in rejecting UM coverage. Second, plaintiff argues that the waiver form is vague and ambiguous. Third, plaintiff urges that, by using a form where the selection has been made on a pre-printed form, the insured, Magnolia, did not specifically reject UM coverage as required by law. Finally, plaintiff argues that UM coverage was not validly rejected in this case because Mr. Janusa did not have the authority to reject such coverage.
Law and Analysis
The appellate court reviews a judgment granting a motion for summary judgment de novo. Royal Street Grocery, Inc. v. Entergy New Orleans, Inc., XXXX-XXXX, p. 5 (La.App. 4 Cir. 2/20/02), 811 So.2d 120, 123; Freeman v. Hutson, 99-1438, p. 5 (La.App. 4 Cir. 6/23/99), 738 So.2d 148, 151. The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of actions. Freeman, 99-1438 at p. 6, 738 So.2d at 152. The procedure is favored and shall be construed to accomplish these ends. Id. A summary judgment shall be rendered where if the pleadings, depositions, answers to interrogatories, and admissions *1107 on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
The burden of proof is on the movant to establish a prima facie case that there is no genuine issue of material fact. La. C.C.P. art. 966(C). However, where the mover will not bear the burden of proof at trial with regard to a particular claim or defense, the movant need only prove a lack of factual support for one or more essential elements of the non-moving party's claim or defense. Id. Thereafter, the burden shifts to the non-moving party to produce factual support that a genuine issue of material fact exists. Id. Again, if the non-moving party has the burden of proof at trial, that party must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial. Id. An adverse party to a supported motion for summary judgment may not rest on the mere allegations or denial of his pleadings, but his response, by affidavits or otherwise provided by law, must set forth specific facts showing that there is a genuine issue of material fact for trial. Freeman, 99-1438 at p. 7, 738 So.2d at 152.
In his first assignment of error, plaintiff argues that the language of the rejection form is insufficient to allow the insured an opportunity to make a meaningful selection in rejecting UM coverage. Specifically, plaintiff argues that the rejection form in this case did not contain the option that the insured could opt for UM coverage equal to the bodily injury limits. The Louisiana Supreme Court has held in Tugwell v. State Farm Insurance Co., 609 So.2d 195 (1992) that a rejection form must give the applicant an opportunity to make a meaningful selection by spelling out the insured's option under the UM statute:
At all times relevant to this case, La. Rev.Stat. § 22:1406(D)(1)(a) required uninsured motorist (UM) coverage "in not less than the limits of bodily injury liability provided by the policy." However, such UM coverage was not required "where any insured named in the policy [rejected] in writing the select[ed] lower limits." The statute did not specify how a rejection or selection of lower limits must be in writing and signed by the named insured or his legal representative. Further, the insurer must place the insured in a position to make an informed rejection of UM coverage. In other words, the form used by the insurance company must give the applicant the opportunity to make a "meaningful selection" from his options provided by the statute: (1) UM coverage equal to bodily injury limits in the policy, (2) UM coverage limits lower than the bodily injury limits in the policy, or (3) no UM coverage.
Id. at 196-97 (citations omitted).
However, Louisiana courts have not interpreted Tugwell so rigidly as to require insurance forms to contain an expressed option of selecting UM coverage equal to bodily injury limits. As the Louisiana Supreme Court stated in Daigle v. Authement, 96-1662 (La.4/8/97), 691 So.2d 1213:
The insured ... argues that the form should have provided a means of affirmatively choosing UM coverage by providing boxes or blanks for her to check indicating her selection among the statutory options. While such a format may be desirable, it is not the only way of making sure that the applicant is fully informed of the available options and allowed to choose between them. In Tugwell, we noted that the task of informing the applicant of available options can be accomplished in several *1108 ways. It is not the job of the courts to draft insurance forms or to dictate the exact format or wording which must be used for a valid rejection of the mandated UM coverage.[1]
Id. at pp. 5-6, 691 So.2d at 1216. Specifically, Louisiana jurisprudence states that a rejection form not containing an option to choose UM coverage equal to bodily injury limits is nonetheless valid where the form contains some written indicia that the insured's lack of selection would result in UM coverage equal to bodily injury liability limits. Daigle, 96-1662 at pp. 4-5, 691 So.2d at 1215; Evans v. Crowe, 98-2422, p. 5 (La.App. 1 Cir. 12/28/99), 765 So.2d 366, 368-69. In fact, the Louisiana Supreme Court in Daigle v. Authement, held that a rejection form that does not contain a specific option for the insured to select UM coverage equal to bodily injury limits is valid where the form otherwise informs the insured that the absence of any rejection of UM coverage will automatically result in UM coverage equal to bodily injury limits. 96-1662 at pp. 4-5; 691 So.2d at 1215.
In this case, the rejection form does not contain a specific option for the insured to choose UM coverage equal to the bodily injury coverage. However, as in Daigle, the rejection form in this case clearly informs the insured that Louisiana law requires that UM coverage be provided in the amount equal to bodily injury limits and that such will be the case unless UM coverage is specifically rejected. As such, the language of the rejection form is sufficient under the requirements of Tugwell.
Plaintiff argues that the holding of Evans v. Crowe, 98-2422 (La.App. 1 Cir. 12/28/99), 765 So.2d 366, is on point and stands for the proposition that Louisiana law requires that a UM rejection form contain an option to select UM coverage equal to bodily injury limits. Neither assertion is correct: the holding in Evans is distinguishable and its analysis is completely consistent with the analysis of Daigle. In Evans, the court held as invalid a UM rejection form that contained only two options: one option for UM coverage lower than the liability limits and another option completely rejecting UM coverage. Id. at p. 4, 765 So.2d at 368. However, the rejection form contained language that only informed the insured of the insured's right to totally reject UM coverage or select UM coverage in an amount lower than liability limits: there was no language informing the insured that a lack of a selection would result in UM coverage. Id. The court did not hold the form invalid solely on the absence of an option on the form to choose UM coverage equal to the liability limits, but explicitly noted that the form "any written indicia that the insured's lack of a selection would result in UM coverage at liability limits." Id. As mentioned above, the UM form in the case sub judice does contain the "written indicia" required by the analysis in Evans. The holding of Evans is therefore distinguishable and its analysis is completely consistent with the analysis of Daigle. In any event, plaintiff's first assignment of error has no merit.
In his second assignment of error, plaintiff argues that the text of the waiver form is vague and ambiguous. Plaintiff argues that the absence of a "box" where the "x" was placed renders the form unclear. *1109 This assignment is meritless on its face. We find that, in viewing the executed rejection form, the absence of a box where the "x" was placed is of no moment: the form clearly shows an "x" near the option rejecting coverage. The form adequately conveys the insured's intent to reject UM coverage. Therefore, this assignment of error has no merit.
In his third assignment of error, plaintiff argues that Magnolia did not clearly and unmistakably choose to reject UM coverage. Specifically, plaintiff argues that, by using a pre-printed form where the selection was already made, Magnolia did not perform an affirmative act in choosing to reject coverage and, as such, did not sufficiently convey an intent to reject coverage. In support of his position, plaintiff cites the case of Henson v. Safeco Insurance Companies, 585 So.2d 534 (La.1991) for the proposition that the signature of a preprinted form is insufficient to constitute rejection of UM coverage.
Plaintiff reads Henson too broadly. In Henson, the court noted from the record that the insured's only action was to place a signature of the policy. There, the transaction between the insured and insurer involved the insured submitting an application and the insurer responding by sending a rejection form drafted in such a way that the insured was required to affirmatively change the form in order to accept UM coverage. 585 So.2d at 539. In such circumstances, the court held that UM coverage was not specifically rejected as required by Louisiana law.
In the case at bar, Magnolia did not merely sign a pre-printed rejection form sent by Travelers. Magnolia's representative and insurance agent collaborated on the draft of the form. A blank form was sent to Magnolia, which form was returned to the insurance agent with instructions as to how to fill out the form. The mere fact that the form was filled out by the insurance agent is of no moment, as it was prepared pursuant to the instruction of the insured. Thus, the record indicates that Magnolia specifically rejected UM coverage. This assignment of error has no merit.
Finally, plaintiff argues that the UM rejection form is invalid because the signatory of the form, Mr. Janusa, was without authority to sign on behalf of Magnolia. Plaintiff's only support for this contention is an admission by Mr. Janusa that there was no express corporate resolution authorizing him to execute the UM rejection on behalf of Magnolia.
Louisiana law does not require that a corporation issue a corporate resolution in order for a corporate representative to validly execute a rejection form. See Ruiz v. Lewis, 579 So.2d 1203, 1206 (La. App. 4 Cir.1991), Writ denied, 586 So.2d 562 (La.1991) ("Corporate authority may be explicitly or implicitly proved"). The record is uncontroverted that Mr. Janusa was the secretary/treasurer of Magnolia and that his duties under that position included the procurement of insurance. Such testimony is sufficient to establish his authority to sign the UM rejection form on behalf of Magnolia. The absence of an explicit corporate resolution to that effect is insufficient to create an issue of fact as to that authority.
Conclusion
Accordingly, we hold that the trial court did not err in finding the UM rejection form in this case valid and enforceable as a matter of law. We therefore affirm the decision of the trial court granting summary judgment in favor of defendant and dismissing plaintiff's UM claim.
AFFIRMED.
NOTES
[1] Plaintiff has introduced as evidence several forms used by Travelers in other states to show that the form in question is inadequate. Since we are dealing with the rejection form requirements in Louisiana, the presence or absence of an option to choose UM coverage equal to bodily injury on a form used in another state is irrelevant to these proceedings.