579 So.2d 1203 (1991)
Arthur RUIZ
v.
Suzanne M. LEWIS and State Farm Mutual Automobile Insurance Company.
No. 90-CA-0918.
Court of Appeal of Louisiana, Fourth Circuit.
May 16, 1991.
Rehearing Denied June 18, 1991.
*1204 Andrew L. Plauche, Jr., Plauche and Maselli, New Orleans, for defendant-appellee William Keith Kerr.
Robert H. Schmolke, Isaac F. Hawkins, III, Baton Rouge, for plaintiffs-appellants Arthur Andres Ruiz, Jr. and Patty Lemoine Ruiz.
Before KLEES, BYRNES and WILLIAMS, JJ.
BYRNES, Judge.
The issue presented by this appeal is whether the trial court was correct in finding no uninsured motorist (UM) coverage under an excess insurance policy by one group of defendants and in granting a motion for summary judgment dismissing all claims against that defendant group with prejudice. We reverse.
On March 13, 1987, Arthur Ruiz, operating a 1985 Chevrolet pickup truck leased by his employer, New Orleans Public Service (NOPSI), sustained injuries in an automobile collision with a 1982 Chevrolet driven by Suzanne M. Lewis at the intersection of LaPlace Street and Louisiana Highway 39 in Chalmette.
The Ruizes sued Suzanne Lewis and her liability insurer, State Farm Mutual Automobile Insurance Company (providing a $50,000 policy limit); State Farm Mutual Automobile Insurance Company (as alleged uninsured motorist insurer of Ruiz with a $25,000 policy limit); National Union Fire Insurance Company (as excess liability insurer of Ruiz's employer, providing liability coverage in the amount of $350,000 excess of $250,000 self-insured liability limit of NOPSI); Keith William Kerr, representing certain underwriters at Lloyd's, London (collectively Kerr), subscribing to Insurisk Certificate of coverage No. 1262 (providing excess liability coverage for NOPSI in the *1205 amount of $400,000 excess of $600,000). Plaintiffs also sued Employer's Casualty Company as alleged underinsured motorist insurer for Arthur Ruiz under a policy issued by BLC Corporation, as owner of the vehicle leased to NOPSI and operated by Ruiz. In addition, NOPSI intervened for compensation paid to Arthur Ruiz, and Suzanne Lewis filed as plaintiff in reconvention for her own damages.
On March 26, 1990, the trial court issued a judgment granting a motion for summary judgment and dismissing Kerr from the litigation with prejudice based on the finding that a valid rejection of uninsured motorist coverage had been executed by an authorized executive of NOPSI. Plaintiffs appeal that judgment.
On appeal plaintiffs contend that the trial court erred in granting summary judgment to Kerr with respect to its excess liability insurance policy based on the following claims: (1) material issues of fact remain concerning the authenticity of the signature on the rejection waiver of UM coverage and the authority of the company officer to sign; (2) the court accepted unsworn and unauthenticated documents as evidence; (3) changes in endorsements in the insurance policy implemented a new policy of insurance for which a new waiver of UM coverage was required but not procured; (4) the UM waiver was ambiguous; and (5) defendant lacked proof regarding a knowing and informed waiver of UM coverage.
To effect a valid rejection of UM coverage under LSA-R.S. 22:1406(D)(1)(a), the insured or his authorized representative must expressly set forth in a single document that UM coverage is rejected in Louisiana as of a specific date in a particular policy issued or to be issued by the insurer. Roger v. Estate of Moulton, 513 So.2d 1126, 1132 (La.1987); Smith v. Travelers Ins. Co., 560 So.2d 472, 474 (La.App. 1st Cir.1990) writ denied, 564 So.2d 325 (La.1990). The automobile insurer has the burden to prove either rejection or else selection of lower limits if the insurer is to escape the statutory obligation that its policy shall contain UM coverage equal in amount to its bodily injury coverage. Aramburo v. Travelers Ins. Co., 426 So.2d 260, 261 (La.App. 4th Cir.1983), writ denied, 433 So.2d 161 (La.1983) and phraseology altered, 438 So.2d 274 (La.App. 4th Cir.1983), writ denied, 443 So.2d 1110 (La. 1983).
The pertinent UM waiver relative to Kerr's insurance policy, Certificate Number 1262 states:
UNDERWRITERS AT LLOYD'S/LONDON AND INSURANCE COMPANIES LOUISIANA UNINSURED/UNDERINSURED MOTORIST OPTION FORM TO: MIDDLE SOUTH UTILITIES, INC. AND NEW ORLEANS PUBLIC SERVICE INC., C/O Middle South Services, Inc., P.O. Box 61000, New Orleans, LA 70161
RE: CERTIFICATE # 1262
We are required to offer excess uninsured motorists coverage in connection with umbrella and excess policies issued in your state.
Please check one of the following based upon your preference:
X 1. I reject excess uninsured/underinsured motorist coverage for the umbrella or excess policy in its entirety.
___2. I request excess uninsured/underinsured motorist coverage be provided in my unbrella or excess policy.
If you checked item 2, advise what limit is to apply to uninsured/underinsured motorists within the umbrella or excess policy.
NOTEIf you checked item 2, you must carry uninsured/underinsured motorist limits at least equal to the limit carried for automobile liability insurance in your commercial automobile insurance policy AND, the umbrella or excess policy will be subject to additional premium charges.
Please sign, date, retain one copy for your records and return the remaining copies to your agent.
Signature of Named Insured New Orleans Public Service Inc. (handwritten) Date 5/21/86 (handwritten)
NAME: G.D.M. London (handwritten)

*1206 TITLE: EXECUTIVE VICE-PRESIDENT COMPANY: New Orleans Public Service Inc.
Plaintiffs argue that defendant failed to prove that the signature was authentic or that the corporate representative was authorized to sign the UM rejection on behalf of NOPSI. The authenticity of the insured's representative's signature on a rejection of UM coverage is a material issue of fact. Joseph v. Foremost Insurance Company, 532 So.2d 909 (La.App. 5th Cir.1988). Corporate authority may be explicitly or implicitly proved but must be proved by admissible evidence. Thibodeaux v. Burton, 538 So.2d 1001 (La.1989).
A motion for summary judgment should be granted if, and only if, the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. Smith v. Travelers Insurance Co., id., 560 So.2d at 474. Where a corporate executive testified that he signed the waiver and had the authority to execute the form, and the affidavit of the corporation's assistant secretary stated that the insurance manager had that authority, the court found a valid waiver without the necessity of a corporate resolution in Delaune v. State Farm Mut. Auto Ins. Co., 529 So.2d 1289 (La.App. 3rd Cir.1988); Meziere v. Farm Bureau Mut. Ins. Co., 560 So.2d 106 (La.App. 3rd Cir.1990).
To support its motion for summary judgment, Kerr attached the transcript of the sworn deposition of William L. Carpenter, Jr., Insurance and Loss Control Manager of NOPSI, the UM rejection form, and the corporate resolution for the UM rejection. Carpenter identified the rejection waiver and corporate resolution as business records of NOPSI. Carpenter also identified the signature of Mr. McClendon and testified that Mr. McClendon had the authority to execute the rejection on the basis of the resolution by the Board of Directors of NOPSI.
Plaintiffs note that Mr. Carpenter had signed as a witness on previous UM waivers but had not done so on May 21, 1986. However, we conclude that the deposition testimony of Mr. Carpenter properly substantiates the authenticity of Mr. McClendon's signature and his authority to execute the UM waiver of May 21, 1986. Further, plaintiffs assert that the rejection signed by G.D. McClendon is ambiguous in the following wording:
X 1) Further I reject excess uninsured/underinsured motorist coverage for the umbrella or excess policy in its entirety.
Plaintiffs interpret this sentence to indicate that Mr. McClendon rejected uninsured motorist coverage of a greater amount than his liability limits. However, we find that the insured is clearly waiving any UM coverage that the insured could obtain under the limits of the insured's excess insurance policy.
Plaintiffs argue that the rejection waiver dated May 26, 1986 does not apply because the Kerr excess insurance policy was later changed and the policy limit itself was increased, creating a new policy of insurance for which a new UM waiver was required.
The initial Certificate of Coverage No. 1262 issued August 1, 1984 provided policy limits of $500,000 any one occurrence excess of $500,000 and adopted the policy language of Lloyd's underlying policy of insurance Certificate No. 1261. Effective November 1, 1985, the policy limits were changed to $400,000 any one occurrence excess of $600,000 any one occurrence by Endorsement No. 10.
Endorsement No. 11 dated December 1, 1985, changed the sum insured to 100% of 30% of $400,000 any one occurrence subject to $3,000,000 in the aggregate for the period excess of $600,000 any one occurrence. The pertinent rejection waiver of May 26, 1986 was effective after Endorsement 11 was added.
Under LSA-R.S. 22:1406(D)(1)(a), uninsured  underinsured motorist coverage need not be provided in or supplemental to a renewal of a substitute policy where the *1207 named insured has rejected coverage or selected lower limits in connection with a policy previously issued to him by the same insurer. The crucial issue in the present case is whether Endorsements No. 12 and/or No. 13, both dated November 1, 1986, effected a new policy requiring a new UM waiver or whether the endorsements provided a substitute or renewal policy as contemplated under LSA-R.S. 22:1406(D)(1)(a), not requiring any additional UM waiver. No other endorsements were provided before the date of the accident on March 13, 1987.
Endorsement No. 13 reflects that the underlying insurer has been designated as National Union Fire Insurance Company; however, we find no change in liability limits of excess insurers represented by Kerr in this endorsement.
Endorsement No. 12 states that the following amendments shall apply hereto: "sum insured: Hereto 100% of Limit: $400,000 each loss subject to $3,000,000 in the aggregate; excess of $600,000 each loss.... Other terms and conditions of the contract remain unchanged." The percentage and underlying groups of insurers have been altered in this endorsement.
Kerr argues that plaintiffs base their claim on changes in participation endorsements to the policy. Kerr asserts that although the policy contains new endorsements not included in the previously existing policy, it nevertheless constitutes a renewal policy of a previously existing policy and does not require a new waiver of UM coverage. [See Mouton v. Guillory, 494 So.2d 1374 (La.App. 3rd Cir.1986) ].
The insurer carries the burden of proving that any insured named in the policy rejected in writing the coverage equal to bodily injury coverage or selected lower limits. Aramburo v. Travelers Insurance Company, id. Where there is an increase in bodily injury limits of the insurance policy, an additional written rejection or selection of lower limits is required. Guilbeau v. Shelter Mut. Ins. Co., 549 So.2d 1250 (La.App. 3rd Cir.1989).
Under Endorsement 12, the sum insured increased from 100% of 30% to 100% of $400,000 each loss subject to $3,000,000 in the aggregate, excess of $600,000 each loss. (It is noted that Endorsement No. 5 of Certificate No. 1262 states that the policy to which the endorsement is attached provides liability insurance covering bodily injury and property damage). Because the sum insured increased the insured's liability from 30% to 100% of the above liability limits, the amount of UM coverage provided to the insured is also increased, and the insured must be given the opportunity to specifically waive or select lower limits of UM coverage.
Therefore, when Endorsement No. 12 created new liability coverage by the insured, and when there was no written rejection of UM coverage in that amount or selection of lower limits by the insured, under LSA-R.S. 22:1406(D)(1)(a), we find that the new policy was issued with uninsured motorist limits of 100% of $400,000 any one occurrence subject to $3,000,000 the aggregate, excess of $600,000 each loss.
Accordingly, the judgment on motion for summary judgment dismissing Kerr from all claims is reversed and this case is remanded for proceedings consistent with this opinion. Costs of appeal are assessed to the appellee, William Keith Kerr.
REVERSED AND REMANDED.