MAX N. TOBIAS, JR, Judge.
11 Angela M. Terrell (“Terrell”) appeals a judgment granting the motion for summary judgment of ACE American Insurance Company (“ACE”), dismissing her claims for uninsured/underinsured motorist (“UM”) coverage under a policy of insurance issued to the owner/lessee of the vehicle which she was driving. For the reasons that follow, we affirm.
On 5 March 2010, a motor vehicle accident occurred on U.S. Highway 190 in Pointe Coupee Parish between a van leased by Terrell’s employer, Professional Transportation, Inc. (“PTI”) from United Leasing, Inc. (“ULI”), and a vehicle driven by Roger Fontenot (“Fontenot”). The PTI van, driven by Terrell, was westbound and Fontenot’s vehicle was headed eastbound; the accident happened when Fon-tenot’s vehicle crossed the center line of the highway and collided head-on with the PTI van. Terrell was at the time transporting three Union Pacific Railroad workers to their jobsite.
Terrell filed suit against Fontenot and his insurer, State Farm Mutual Automobile Insurance Company, in the Civil District Court for her injuries | sustained in the accident. Additionally, she named ACE, as the insurer of PTI’s van, as a party defendant. She supplemented her petition asserting that ACE provided UM coverage for the van she was driving and thusly ACE was responsible for any damages not covered under Fontenot’s insurance.
ACE filed a peremptory exception of no cause of action and an alternative motion for summary judgment and alternatively for a change of venue alleging that UM coverage from ACE had been validly rejected and therefore no UM coverage for PTI or Terrell was provided. In support of its assertion, ACE attached a copy of the Uninsured/Underinsured Motorist Bodily Injury Coverage form, showing that UM coverage had been rejected by Charles Guard (“Guard”) on behalf of PTI. Ace further attached Guard’s affidavit that attested that he was authorized to execute the form rejecting UM coverage from ACE on behalf of PTI. Terrell filed a cross motion for summary judgment alleging that UM coverage had not been validly rejected by Guard on behalf of PTI, because Guard was not properly designated as PTI’s legal representative to do so. Accordingly, Terrell asserts UM coverage should be read into the Ace policy.
Before holding a hearing on the motions, the parties agreed to continue the hearing until Guard’s deposition could be taken. In deposition, Guard stated that he was employed by ULI and had been so for 20 years. He explained that PTI provided ground transportation for railroad workers; that PTI leases its vehicles from UTI, the financing company; and that PTI and ULI are separate legal entities but commonly owned by United Companies, which is privately owned by the Romain family. Guard stated that he has authority to procure insurance and sign [.-¡insurance forms on behalf of PTI and has done so for 12 years. Guard also stated that Ronald Ro-main (President of PTI and ULI) gave him verbal authority to procure insurance and sign insurance forms on behalf of PTI. He further stated that he has never had written authority to act for PTI.
At the hearing the trial court granted ACE’s motion for summary judgment, dismissing Terrell’s claims against it with prejudice, relying on Duncan v. U.S.A.A. Ins. Co., 06-0363 (La.11/29/06), 950 So.2d 544; Harper v. Direct Gen. Ins. Co., 08-2874 (La.2/13/09), 2 So.3d 418, and Banquer v. Guidroz, 09-466 (La.5/15/09), 8 So.3d 559. This timely appeal followed.
*661 We review this matter granting a motion for summary judgment de novo. La. C.C.P. art. 966; Samaha v. Rau, 07-1726, pp. 3-4 (La.2/26/08), 977 So.2d 880, 882; Duncan, p. 3, 950 So.2d at 546; see also Hines v. Garrett, 04-0806, p. 1 (La.6/25/04), 876 So.2d 764.
Although Terrell assigns seven errors committed by the trial court, they all address the same issue: Did the trial court err in granting ACE’s motion where evidence supports that UM coverage was not validly rejected by the insured?
Terrell argues that PTI properly filled the UM coverage form, but the signatory to the form was not legally authorized to act as PTI’s legal representative. That is, Terrell asserts that Guard’s signature on behalf of PTI had no legal effect and UM coverage was not validly rejected. In support, Terrell cites La. C.C. art. 2986 which provides that the authority to act on behalf of another can only be conferred by law, by contract (such as mandate or partnership), or the unilateral juridical act of proc-uration. She asserts that since the UM coverage rejection must be in writing, the legal representative must have authority to do so in writing to comply with La. C.C. art. 2993. Further, she asserts that Holloway v. Shelter Mut. Ins. Co., 03-896 (La.App. 3 Cir. 12/10/03), 861 So.2d 763, is dispositive of the issue.
Contrariwise, ACE argues that the UM coverage rejection complied completely with Duncan, supra, and that Holloway is distinguishable
Louisiana has a strong public policy favoring UM coverage. Duncan, p. 4, 950 So.2d at 547. UM coverage is determined by the contract between the insurer and insured and applicable law. UM coverage is an implied amendment to an automobile liability policy, even when not specifically addressed therein, and it will be read into a policy unless validly rejected. Kurz v. Milano, 08-1090, p. 4 (La.App. 4 Cir. 2/18/09), 6 So.3d 916, 919 (quoting Duncan, p. 4, 950 So.2d at 548). The rejection of UM coverage must be clear and unambiguous. Daigle v. Authement, 96-1662, p. 2 (La.4/8/97), 691 So.2d 1213, 1214. The statute providing for coverage in the absence of a valid rejection should be liberally construed whereas a statutory exception to UM coverage must be strictly construed. Kurz, p. 5, 6 So.3d at 919. An “insurer bears the burden of proving any insured named in the policy rejected in writing the coverage equal to bodily injury coverage or selected lower limits.” Duncan, p. 5, 950 So.2d at 547. A rejection of UM coverage must be made upon a form prescribed by the Louisiana commissioner of insurance. La. R.S. 22:1295(l)(a)(ii). A properly completed UM coverage form where the signatory rejected coverage creates a rebuttable presumption that the insured knowingly rejected UM coverage. Id.
In pertinent part, La. R.S. 22:1295(l)(a)(ii) states:
Such rejection, selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance. The prescribed form shall be provided by the insurer and |ssigned by the named insured or his legal representative. The form signed by the named insured or his legal representative which initially rejects such coverage, selects lower limits, or selects economic-only coverage shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto. A properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage, se *662 lected a lower limit, or selected economic-only coverage. The form signed by the insured or his legal representative which initially rejects coverage, selects lower limits, or selects economic-only coverage shall remain valid for the life of the policy and shall not require the completion of a new selection form when a renewal, reinstatement, substitute, or amended policy is issued to the same named insured by the same insurer or any of its affiliates. [Emphasis supplied.][1]
In Duncan, pp. 11-12, 950 So.2d at 551, the Court established the criteria for an insured to properly complete a form rejecting UM coverage: (1) initialing the selection or rejection of coverage chosen; (2) if limits lower than the policy limits are chosen, then filling in the amount of coverage selected for each person and each accident; (3) printing the name of the named insured or legal representative; (4) signing the name of the named insured or legal representative; (5) filling in the policy number; and (6) filling in the date.
The form rejecting UM coverage shows that Guard’s initials appear next to the paragraph that states, “I do not want UMBU Coverage.” The name of the | fiinsured, PTI, is printed on the form as is the policy number and the effective date, 11 March 2009. The form is signed by Guard in the blank for the signature of the named insured or legal representative.
The parties do not dispute that the correct form for rejection of UM coverage was properly and completely filled out. The gravamen is whether Guard had been properly delegated the authority to sign and reject UM coverage on the company’s behalf.
We understand the words “legal representative” in La. R.S. 22:1295(l)(a)(ii) to mean an individual authorized on behalf of an entity. An entity, such as a corporation, limited liability company, partnership, trust, or estate, operates through the acts and actions of individuals. An entity itself cannot act on its own behalf, but instead gives authority to an individual to act on its behalf. To embrace the theory that UM coverage was not properly rejected as proffered by Terrell, the president of a corporation, the manager or members of a limited liability company, or a partner of a partnership would have to specifically delegate in writing to another individual the authority to sign a UM rejection on behalf of the entity.[2] Such would be like straining at a gnat after swallowing the camel,[3] letting alone unrea *663 sonably burdensome. La. C.C. art. 10; see Thibodeaux v. Burton, 538 So.2d 1001, 1004 n. 1 (La.1989) (corporate authority may be explicitly or implicitly proven); Ruiz v. Lewis, 579 So.2d 1203, 1206 (La.App. 4th Cir.1991).
Further, we agree with ACE that the Third Circuit’s decision in Holloway v. Shelter Mut. Ins. Co., 03-896 (La.App. 3 Cir. 12/10/03), 861 So.2d 763, is distinguishable. Holloway addressed UM coverage in a dispute between an insurer and family representatives of the insured. The gravamen therein was whether a mother had the authority to sign the rejection of UM coverage. In the case at bar, no dispute exists between the insurer and the insured; PTI, ULI, and ACE agree that UM coverage had been rejected. Moreover, Guard had been managing the insureds’ policies of insurance for some 12 years and had previously and always rejected on behalf of the insured UM coverage based upon instructions from the corporation’s “owner,” its president or authorized individual.[4]
It is undisputed that Guard was given verbal authorization (by the president of both PTI and ULI, Ronald Romain) of Guard’s authority to reject UM coverage. No Louisiana law exists requiring the governing body of an entity or a president or chief executive officer of an entity to formally and in writing specify who has authority to decline UM coverage. Guard filled out the proper form designated by the Louisiana Commissioner of Insurance and followed all of the necessary steps required by Duncan, supra. His rejection was clear and unambiguous, leading to the conclusion that the UM coverage was knowingly rejected.
1 s Our conclusion herein is consistent with the Louisiana Supreme Court’s per curiam decisions in Harper v. Direct Gen. Ins. Co., 08-2874 (La.2/13/09), 2 So.3d 418, and Banquer v. Guidroz, 09-466 (La.5/15/09), 8 So.3d 559.
For the foregoing reasons, we affirm the trial court’s judgment dismissing Terrell’s claim’s against ACE.
AFFIRMED.
BELSOME, J., dissents with reasons.

. Further, we note that La. R.S. 22:1296 B(4), addressing leased vehicles, that is not specifically relevant in the case at bar due to the absence of evidence about the complete nature of ULI's vehicle rental business, states:
In the event that the rental company provides minimum financial responsibility limits pursuant to this Section, the rental company shall be exempt from R.S. 22:1295 and shall not be required to extend uninsured or underinsured motorist coverage or to offer renters or additional authorized drivers an opportunity to accept, reject, or select lower limits of uninsured or underinsured motorist coverage. [Emphasis supplied.]

. By way of illustration, the president of Exxon Mobil Corporation would have to designate in writing the precise individual who is authorized to reject Louisiana UM coverage and when that individual left Exxon's employment or transferred to another position within Exxon's corporate structure, a new written authorization would have to signed by the corporate president; concomitantly, such would raise the issue whether the board of directors, by-laws, and /or articles of incorporation of Exxon allowed the president to even waive Louisiana UM coverage.

.World Trade Center Taxing District v. All Taxpayers, Property Owners, and Citizens of World Trade Center Taxing District and Nonresidents Owning Property or Subject to Taxation Therein, 05-0048, p. 17 (La.App. 4 Cir. *663 2/1/05), 894 So.2d 1185, 1196, aff'd, 05-0374 (La.6/29/05), 908 So.2d 623

. In light of the Supreme Court’s decision in Riggins v. Dixie Shoring Co., Inc., 577 So.2d 1060 (La.App. 4th Cir.1991), rev'd, 590 So.2d 1164 (La.1991), corporate formalities need not be followed.