CRAIG BIAGAS          *　　NO. 2021-CA-0680

VERSUS              *

RONALD PORTAWAY, ET AL.   *

                       *

             * * * * * * *

COURT OF APPEAL

FOURTH CIRCUIT

STATE OF LOUISIANA

APPEAL FROM
ST. BERNARD 34TH JUDICIAL DISTRICT COURT
NO. 19-1730, DIVISION "A"
Honorable William M McGoey, Judge
* * * * * *
**Chief Judge Terri F. Love**
* * * * * *
(Court composed of Chief Judge Terri F. Love, Judge Dale N. Atkins, Judge Pro
Tempore Lynn M. Luker)

**ATKINS, J., CONCURS**

Matthew C. Nodier
NODIER LAW, LLC
8221 Goodwood Boulevard, Suite A
Baton Rouge, LA 70806


       COUNSEL FOR PLAINTIFF/APPELLEE


David C. Jarrell
9101 W. St. Bernard Hwy.
Chalmette, LA 70043


       COUNSEL FOR DEFENDANT/APPELLANT


                     **REVERSED; REMANDED**
                         **March 16, 2022**

This appeal arises from an automobile accident. Craig Biagas was driving a vehicle owned by his employer, Cox Communications, Inc. (hereinafter, "Cox"), during the accident. Mr. Biagas later filed suit against the other motorist, Ronald Portaway, and Mr. Portaway's insurer. Mr. Biagas also filed an underinsured motorist claim with the liability carrier for the Cox vehicle, National Union Fire Insurance Company of Pittsburgh, PA ("National Union"). National Union filed a motion for summary judgment which sought to declare that its policy did not provide underinsured motorist coverage because underinsured motorist coverage was waived by Cox. The trial court granted National Union's motion for summary judgment and dismissed it from the suit.

The estate of Mr. Biagas now appeals this judgment, arguing that underinsured motorist coverage was not waived because the form rejecting coverage was not valid and the individual who signed the form for National Union was not properly authorized to do so.

We find that the form rejecting coverage was not properly completed because the insurer's name was not included, thereby resulting in the invalidity of the form and invalidating the waiver overall. We further find that the signatory was properly authorized to sign for National Union because written authorization is not required for corporate representatives to execute waiver forms on behalf of their employers.

Accordingly, the judgment of the trial court is reversed and the matter is remanded.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The automobile accident underlying this suit occurred on November 29, 2018, between Mr. Biagas and Mr. Portaway. At the time of the accident, Mr. Biagas was driving a vehicle belonging to his employer, Cox. Mr. Biagas instituted a suit against Mr. Portaway, an underinsured motorist, and Mr. Portaway's insurer. In addition, Mr. Biagas filed an underinsured motorist claim with National Union, the liability carrier for Cox. While the suit was pending, Mr. Biagas passed away, and his wife and children were substituted into the claim.

National Union filed a motion for summary judgment, arguing that its policy did not provide underinsured motorist coverage because Cox, through Cox Enterprises, Inc., had waived that coverage by executing an Uninsured/Underinsured Motorist Bodily Injury Coverage waiver form ("UM form"). On the UM form, neither the name of the insurer, the group name, nor the

2

insurer's logo was provided.  The form was signed by Don Stryszko, Cox's Vice President of Risk Management.

Following a hearing, the trial court granted National Union's motion for summary judgment, dismissed it from the suit, and granted its request to have the court designate the judgment as a final judgment.  The trial court found that there was no material dispute of fact that a valid UM form was executed by Cox and that the UM form complied with the requirements of *Duncan v. U.S.A.A. Ins. Co.*, 06-0363 (La. 11/29/06), 950 So. 2d 544.  The Biagas estate filed the instant appeal of the trial court's judgment.

## DISCUSSION

### *Standard of Review*

The standard of review in examining a trial court ruling on a motion for summary judgment is *de novo*, "using the same criteria applied by trial courts to determine whether summary judgment is appropriate." *Kurz v. Milano*, 08-1090, p. 3 (La. App. 4 Cir. 2/18/09), 6 So. 3d 916, 918 (citing *Indep. Fire Ins. Co. v. Sunbeam Corp.*, 99-2181, p. 7 (La. 2/29/00), 755 So. 2d 226, 230).  Summary judgment "shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3).

Normally, the burden of proof in a motion for summary judgment rests with the mover. La. C.C.P. art. 966(D)(1).  If the mover will not bear the burden at trial on the issue under review for summary judgment, the mover is not required to

3

"negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." *Id.* "The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." *Id.*

"A dispute as to whether, as a matter of law, an insurance policy provides or precludes coverage to a party can be properly resolved within the framework of a motion for summary judgment." *Dore v. Brignac*, 00-1719, p. 3 (La. App. 4 Cir. 6/20/01), 791 So. 2d 736, 738 (citing *Garcia v. Certified Lloyds Ins. Co.*, 598 So. 2d 1278, 1280 (La. App. 4 Cir. 1992); *Lefeaux v. Taylor*, 97-0332, p. 2 (La. App. 4 Cir. 9/24/97), 700 So. 2d 1027, 1028). The burden of proof for insurance coverage matters in the summary judgment context has been summarized by this Court:

> When seeking recovery under a policy of insurance, it is the plaintiff's burden to establish every essential fact and that his claim is within the policy coverage. *See Mercadel v. Tran*, 92-0798 (La. App. 4 Cir. 3/29/94), 635 So. 2d 438, 440. The Supreme Court, nevertheless, has held that the uninsured motorist statute should be liberally construed. *See Duncan*, 06-0363, p. 4, 950 So. 2d at 547. Because uninsured motorist coverage is an "implied amendment of any automobile liability policy" issued in Louisiana, and will be read into the policy "even when not expressly addressed," a plaintiff seeking to prove the *presence* of such coverage need only show that at the time of the loss he was insured by a policy of "automobile liability insurance delivered or issued for delivery in Louisiana and arising out of ownership, maintenance, or use of a motor vehicle registered in Louisiana and designed for use on public highways." La. R.S. 22:1295(1)(a)(1); *Green [ex rel. Peterson v. Johnson]*, 14-0292, p. 5 [(La. 10/15/14),] 149 So. 3d [766,] 771.
>
> Conversely, the uninsured motorist statute's liberal construction requires that "the statutory exceptions to coverage be interpreted

4

strictly." *Duncan*, 06-0363, p. 4, 950 So. 2d at 547. Any exclusion from coverage in an insurance policy must, therefore, be clear and unmistakable. *See Duncan*, 06-363, pp. 4-5, 950 So. 2d at 547. "In accordance with this strict construction requirement, the insurer bears the burden of proving any insured named in the policy rejected in writing the coverage equal to bodily injury coverage or selected lower limits." *Duncan*, 06-0363, p. 5, 950 So. 2d at 547. As noted, a properly completed uninsured motorist coverage form where the signatory rejected coverage creates a rebuttable presumption that the insured knowingly rejected uninsured motorist coverage. *See Terrell v. Fontenot*, 11-1472, p. 4 (La. App. 4 Cir. 6/27/12), 96 So. 3d 658, 661. The burden of proof then shifts to the insured to present evidence that the uninsured motorist selection form was in fact not properly completed. *See Cortes-Valencia v. Crews*, 14-234, p. 5 (La. App. 5 Cir. 10/29/14), 164 So. 3d 204, 207.

*Rapalo-Alfaro v. Lee*, 15-0209, pp. 9-10 (La. App. 4 Cir. 8/12/15), 173 So. 3d 1174, 1179-80.

### *Assignment of Error #1*

The appellants' first assignment of error is that the trial court incorrectly concluded that the statutory rejection form was valid despite not having the name of the insurance company anywhere on the form.

Liability coverage for uninsured/underinsured motorists is governed by La. R.S. 22:1295. That statute provides that "rejection, selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance." La. R.S. 22:1295(1)(a)(ii). The relevant form utilized by the appellee, National Union, was promulgated by the Commissioner in 2008 with Bulletin No. 08-02. The prescribed form includes two boxes on the lower right-hand side. The upper box contains an area that the insurer "may" use for policy information purposes (such as the policy number). The Commissioner explained that this section does not need to be filled in for the form to be properly

5

completed. In contrast, Bulletin No. 08-02 states that "[t]he lower box <u>must</u> contain one of the following: the individual company name, the group name, or the insurer's logo."

The appellants argue that this language requires the insurance company's name to be inserted in the lower box, and that, lacking that information, the form was not properly completed. In support of their argument, the appellants cite to a recent decision rendered eight days after the trial court's decision in this case. In the cited case, the form at issue was also a form executed under the authority of Bulletin No. 08-02. *Berkley Assurance Co. v. Willis*, 20-0354, 20-0355, p. 12 (La. App. 4 Cir. 9/29/21), 328 So. 3d 567, 574.

The Court examined the evolution of UM forms and discussed the jurisprudential impacts of the language used on those forms. *Id.*, 20-0354, 20-0355, pp. 11-16, 328 So. 3d at 574-77. The Court found that "Bulletin 08-02 made the inclusion of policy information, e.g. policy number, binder number, application number, etc., optional, but the insurers [sic] name was mandatory." *Id.*, 20-0354, p. 14, 328 So. 3d at 575-76. The Court concluded that the UM form "was invalid, because it did not contain the insurer's name, group name, and/or logo" and that this failure to properly complete the form rendered the UM waiver as a whole to be invalid, causing UM coverage to be read into the policy under dispute. *Id.*, 20-0354, 20-0355, p. 17, 328 So. 3d at 577.

The appellee contends that its UM form complied with the requirements articulated in *Duncan*, 06-0363, pp. 11-12, 950 So. 2d at 551, an earlier case

6

decided under a bulletin that preceded Bulletin No. 08-02. *Duncan* concerned the

failure of a UM waiver to include a policy number, as was then required under the

relevant Commissioner's bulletin, Bulletin 98-01. *Id.*, 06-0363, p. 3, 950 So. 2d at

546. Bulletin 98-01 also required that the "company name" be placed on the form.

*Id.*, 06-0363, p. 11, 950 So. 2d at 551. Yet, when the *Duncan* Court pronounced

the requirements for a properly completed UM form, it did not include the

insurance company name. *Duncan* stated that the UM form entails six tasks:

> (1) initialing the selection or rejection of coverage chosen; (2) if limits
> lower than the policy limits are chosen (available in options 2 and 4)
> then filling in the amount of coverage selected for each person and
> each accident; (3) printing the name of the named insured or legal
> representative; (4) signing the name of the named insured or legal
> representative; (5) filling in the policy number; and (6) filling in the
> date.

*Id.*, 06-0363, pp. 11-12, 950 So. 2d at 551.

Subsequently, the Louisiana Supreme Court issued a decision in *Gingles v.*

*Dardenne*, 08-2995 (La. 3/13/09), 4 So. 3d 799. The waiver form in *Gingles* "did

not expressly provide for the insurer's name," despite Bulletin 98-01's requirement

that the company name "be placed at the lower left-hand corner." *Id.*, 08-2995, p.

1, 4 So. 3d at 799. The Court held that although Bulletin 98-01 required the

company name, the failure to include the insurance company's name did not render

the UM waiver invalid. *Id.*, 08-2995, p. 2, 4 So. 3d at 800. *Gingles* relied on

*Duncan* in its holding, finding that the requirements articulated in *Duncan* had

been met because all "pertinent designated spaces on the form were filled out." *Id.*

The appellants argue that *Berkley* and Bulletin No. 08-02 supersede the requirements of *Duncan*. The appellee counters that *Duncan* expressly considered and rejected the notion that the insurance company's name is required because Bulletin 98-01 and Bullet No. 08-02 both contained the same language requiring the "company name."

However, as this Court discussed in *Berkley*, the prescribed UM form issued with Bulletin No. 08-02 made the inclusion of policy numbers optional, while emphasizing that the individual company name, the group name, or the insurer's logo <u>must</u> be included. *Berkley*, 20-0354, 20-0355, pp. 14-15, 328 So. 3d at 575-76. The Court in *Berkley* also pointed out that *Gingles* did not invalidate the insured's waiver of UM, despite the insurer's failure to put its name on the waiver form, because the prescribed UM form designed by the Commissioner at that time "did not include a space for the insurer's name." *Id.*, 20-0354, 20-0355, p. 14, 328 So. 3d at 575.

Bulletin 08-02 addressed this oversight, stating that its revisions were "in response to the myriad of issues that Louisiana courts have recently examined regarding the current UM form, including, but not limited to, what constitutes a properly completed form. . . ." In keeping with this intention, the new form issued in conjunction with Bulletin 08-02 plainly provided space for the insurance company name and highlighted that the company name must be included.

Consequently, we find that the failure in this case to properly complete the prescribed UM form invalidates the UM waiver and results in UM coverage being

read into the policy equal to the liability limits of the policy. *Berkley*, 20-0354, 20-0355, p. 17, 328 So. 3d at 577 (quoting *Barras v. Cardinal Servs., LLC*, 19-530, p. 11 (La. App. 3 Cir. 4/1/20), 297 So. 3d 877, 885, *writ denied*, 20-00978 (La. 11/4/20), 303 So. 3d 631). Therefore, the appellee is not entitled to summary judgment as a matter of law.

### *Assignment of Error #2*

The appellants' second assignment of error asserts that the trial court incorrectly concluded that the statutory rejection form was valid despite the fact that the act of mandate authorizing Mr. Stryszko to sign the rejection form was not in the proper form under Louisiana Civil Code Article 2993.

As we have found the UM waiver invalid, this remaining assignment of error could be pretermitted. However, in furtherance of a complete and thorough review, we address whether a written act of mandate was required to authorize Cox's signatory to reject UM coverage.

Pursuant to La. C.C. art 2993, "[t]he contract of mandate is not required to be in any particular form." "Nevertheless, when the law prescribes a certain form for an act, a mandate authorizing the act must be in that form." La. C.C. art 2993. In this case, the act of waiving UM insurance must be "only on a form prescribed by the commissioner of insurance. . . . signed by the named insured or his legal representative." La. R.S. 22:1295(1)(a)(ii). The appellants argue that because a UM waiver requires a written act, a written act was likewise required to grant Mr. Stryszko authority to sign on behalf of Cox, the insured.

9

The appellants further allege that the appellee failed to produce the requisite evidence of formal compliance with the law as it relates to the act of mandate. The appellee denies that it had any obligation to produce evidence of formal compliance with La. C.C. art 2993, arguing that the properly completed and signed UM form created a rebuttable presumption that the insured knowingly rejected coverage. However, as previously discussed, the form was not properly completed and signed, so the appellee is unable to avail itself of this shift in its evidentiary burden.

In the alternative, the appellee argues that Mr. Stryszko was a legal representative authorized to execute a UM rejection form. The appellee presented an affidavit from a Cox Human Resources Consultant confirming Mr. Stryszko's employment at Cox. The appellee also presented an affidavit from Mr. Stryszko attesting to his authorization to elect or reject UM coverage in his capacity as Vice President of Risk Management. The appellee argues that this evidence is sufficient in light of the fact that "Louisiana law does not require that a corporation issue a corporate resolution in order for a corporate representative to validly execute a rejection form." *Dabney v. Plaisance*, 02-0710, p. 9 (La. App. 4 Cir. 12/4/02), 832 So. 2d 1103, 1109; *see Ruiz v. Lewis*, 579 So. 2d 1203, 1206 (La. App. 4 Cir. 1991); *see Terrell v. Fontenot*, 11-1472, p. 7 (La. App. 4 Cir. 6/27/12), 96 So. 3d 658, 663. In *Dabney*, as in this case, a corporate employee signed a UM waiver form on behalf of his employer, without a written act granting the employee that authority. 02-0710, p. 9, 832 So. 2d at 1109.

10

The appellants argue that the issue of authority to execute UM waiver forms has not been addressed in the context of La. C.C. art 2993. However, in *Terrell*, this Court noted that the appellant in that case raised this exact argument. 11-1472, p. 3, 96 So. 3d at 661. The Court dismissed the appellant's argument, instead finding that "[n]o Louisiana law exists requiring the governing body of an entity or a president or chief executive officer of an entity to formally and in writing specify who has authority to decline UM coverage." *Id.*, 11-1472, p. 7, 96 So. 3d at 663.

Lastly, the appellants rely on *Holloway v. Shelter Mut. Ins. Co.*, 03-986, pp. 6-7 (La. App. 3 Cir. 12/10/03), 861 So. 2d 763, 768, for the premise that an act of "procuration conferring authority to waive UM coverage would require that the authority be given in writing." In *Holloway*, the Third Circuit evaluated whether a mother could possess authorization to reject UM coverage for her son. 03-986, pp. 2-3, 861 So. 2d at 765-66. The mother frequently handled her son's automobile insurance affairs and stated that her son gave her express authorization to reject UM coverage on his behalf. *Id.*, 03-986, p. 2, 861 So. 2d at 765. The Court found that without written authorization, the mother was not authorized to execute a UM waiver for her son. *Id.*, 03-986, p. 8, 861 So. 2d at 769.

*Holloway* is distinguishable from the case at hand. In *Holloway*, the authority to waive coverage is analyzed in the context of a personal familial relationship, not a corporate employment relationship. 03-896, pp. 2-3, 861 So. 2d at 765-66. Furthermore, *Holloway* does not foreclose the possibility of unwritten authority to execute UM waivers, but expresses that, "in this case[,]" "resort to the

11

principle of apparent authority" is not appropriate. *Id.*, 03-986, p. 11, 861 So. 2d at 770.

As a result, we find that Mr. Stryszko was authorized to execute the UM form, despite the omission of a written act of mandate authorizing him to do so.

## CONCLUSION

For the foregoing reasons, we reverse the trial court's judgment and remand the matter for further proceedings consistent with this opinion.

**REVERSED; REMANDED**