# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 03-896

TRENT HOLLOWAY, ET AL.

VERSUS

SHELTER MUTUAL INS. CO.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 208,057
HONORABLE BERT DEXTER RYLAND, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## MARC T. AMY
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Marc T. Amy, and Billy Howard Ezell, Judges.

**REVERSED AND REMANDED.**

Thomas R. Hightower, Jr.
Post Office Drawer 51288
Lafayette, LA 70505
(337) 233-0555
COUNSEL FOR DEFENDANT/APPELLEE:
Shelter Mutual Ins. Co.

John Carl Davidson
Post Office Box 12730
Alexandria, LA 71315-2730
(318) 442-9533
COUNSEL FOR PLAINTIFFS/APPELLANTS:
Trent Holloway
Charlene Holloway Willis
Elizabeth Jeter

AMY, Judge.

The plaintiffs, the children of Donnie Holloway, filed suit against their father's automobile liability insurer, seeking damages under the uninsured/underinsured motorist (UM) coverage of the policy. The insurer filed a motion for summary judgment, alleging that their father had waived UM coverage. The insurer alleges the waiver was made by his mother, who signed the policy and waiver on behalf of Mr. Holloway. The insurer contends this constitutes an effective waiver under La.R.S. 22:1406(D)(1)(a)(ii). The trial court granted the summary judgment. The plaintiffs appeal. For the following reasons, we reverse and remand.

**Factual and Procedural Background**

This case involves the automobile liability policy of Donnie Holloway. The record reveals that Mr. Holloway was killed in an automobile accident on March 26, 2001. Mr. Holloway's children filed suit against Shelter Mutual Insurance Company, Mr. Holloway's insurer, alleging entitlement to UM benefits under the policy. The insurer filed a motion for summary judgment, asserting that the policy contained an effective UM waiver. The insurer therefore sought dismissal of the UM claim against it.

In support of its motion for summary judgment, Shelter submitted affidavits of Bennie Poe, the Shelter agent who wrote the policy, and Janet Holloway, Donnie Holloway's mother. The affidavits indicate that Donnie Holloway purchased a vehicle in September 2000 and contacted Mr. Poe, his existing insurance agent. According to Mr. Poe's affidavit, Mr. Holloway informed him that "he did not wish to carry uninsured motorist coverage, but rather requested that the type of coverage in effect at the time he purchased the vehicle remain in effect on the newly purchased 1985 Mercury Cougar." Mr. Poe further stated in the affidavit that Mr. Holloway

2

"informed him that his mother, Janet Holloway, with whom he is personally familiar as she has handled numerous insurance transactions on behalf of her son in the past, would be executing the necessary documentation to procure liability insurance and reject uninsured motorist coverage." He also stated that Ms. Holloway, did, in fact, arrive at his office and execute the documents.

In her affidavit, Ms. Holloway reported that due to Mr. Holloway's out-of-town employment, she often handled her son's automobile insurance affairs. She stated that he contacted her, giving her "express authorization . . . to sign any and all documents pertaining to automobile insurance on the 1985 Mercury Cougar . . . ." Ms. Holloway specifically stated that she "had full and complete authority, as well as express authorization, pursuant to the instructions of her son, Donnie Holloway, to reject uninsured motorist coverage on the 1985 Mercury Cougar." Finally, she explained that, pursuant to the instructions/authorization of Mr. Holloway, she "placed his initials on the uninsured/underinsured motorist bodily injury coverage form, rejecting uninsured motorist coverage."

The plaintiffs opposed the motion for summary judgment, filing the depositions of Mr. Poe and Ms. Holloway. The plaintiffs urge that these depositions are more equivocal as to whether Mr. Holloway provided Ms. Holloway with specific authority to waive UM coverage. Furthermore, the plaintiffs point out, there is no indication of a written mandate. These factors, the plaintiffs contend, indicate that genuine issues of material fact exist.

The trial court granted the summary judgment, dismissing the plaintiffs' complaint against Shelter. The plaintiffs appeal, assigning the following as error:

A.      The Trial Court erred in refusing to find that pursuant to LA Civil
        Code art. 2993, an uninsured/underinsured motorist coverage be

3

validly rejected by an agent of a principal without written authority for the agent to do so.

B.   The Trial Court erred by granting the Motion for Summary Judgment when contradictory and unclear testimony of Bennie Poe and Janet Holloway created genuine issues of material fact which preclude granting the defendant's Motion for Summary Judgment.

C.   The Trial Court erred in concluding that Janet Holloway's signing of Donnie Holloway's name to an uninsured/underinsured motorist rejection form was a valid rejection of uninsured/underinsured motorist coverage.

## Discussion

Louisiana Code of Civil Procedure Article 966(C)(1) provides that "a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted." Subparagraph (2) further provides:

> The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.

On review, an appellate panel considers a ruling on a motion for summary judgment de novo and does so under the same criteria employed by the district court. *Louisiana Horsemen's Ass'n v. Fair Grounds*, 02-1928 (La. 4/9/03), 845 So.2d 1039.

*Representation and Mandate*

The question at issue is whether, based on the submissions, Ms. Holloway executed an effective waiver of her son's UM coverage. We resolve this question by reference to the statute regarding UM coverage and the requirements for its waiver as

4

well as those articles of the Louisiana Civil Code addressing Representation and Mandate, Title XV.

Louisiana Revised Statute 22:1406(D) addresses UM coverage and its waiver, providing, in part:

> (1)(a)(i)    No automobile liability insurance covering liability arising out of ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle designed for use on public highways and required to be registered in this state or as provided in this Subsection unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover nonpunitive damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death resulting therefrom; *however, the coverage required under this Subsection is not applicable when any insured named in the policy either rejects coverage, selects lower limits, or selects economic-only coverage, in the manner provided in Item D(1)(a)(ii) of this Subsection.* . . . Such coverage need not be provided in or supplemental to a renewal, reinstatement, or substitute policy when the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer or any of its affiliates. . . .

> (ii)    *After September 1, 1987, such rejection, selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance. The prescribed form shall be provided by the insurer and signed by the named insured or his legal representative.* The form signed by the named insured or his legal representative which initially rejects such coverage, selects lower limits, or selects economic-only coverage shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto. A properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage. . . .

(Emphasis added.)

Several aspects of La.R.S. 22:1406(D) are important to resolution of this case. First, La.R.S. 22:1406(D)(1)(a)(i) indicates that a named insured on the policy can reject UM coverage. *See also Odom v. Johnson*, 97-546 (La.App. 3 Cir. 12/10/97),

5

704 So.2d 1254, *writs denied*, 98-0778 (La. 5/1/98), 718 So.2d 419, 98-0826 (La. 5/1/98), 718 So.2d 420, 98-0876 (La. 5/1/98), 718 So.2d 421. There has been no allegation that Ms. Holloway is a named insured under the policy. Accordingly, the statute does not permit a finding that she, as a named insured, waived the UM coverage.

Next, La.R.S. 22:1406(D)(1)(a)(ii) (emphasis added) indicates that a form of waiver may be "signed by the named insured *or his legal representative . . . .*" Thus, we must resolve the question of whether Ms. Holloway was acting as her son's legal representative when she entered Mr. Poe's office and signed Mr. Holloway's name to the UM waiver. The insurer argues that its affidavits indicating oral authorization from Mr. Holloway to both Mr. Poe and Ms. Holloway are sufficient to satisfy the requirement, pointing in particular to principles of actual and apparent authority. The plaintiffs contend that she was not a "legal representative" under La.R.S. 22:1406(D)(1)(a) as the statute requires that a UM waiver be made on an approved waiver form and La.Civ.Code art. 2993 indicates that if a law prescribes a certain form for an act, a related mandate must be in the same form.

With regard to the question of representation, Title XV of the Louisiana Civil Code, entitled Representation and Mandate, provides guidance as to whether Ms. Holloway could be considered a "legal representative" as described by the statute. Title XV is further divided into two sections, Chapter 1, which addresses Representation, and Chapter 2, which addresses Mandate. La.Civ.Code art. 2985 broadly defines the principle of representation, providing: "A person may represent another person in legal relations as provided by law or by juridical act. This is called representation." Furthermore, La.Civ.Code art. 2986 sets forth the methods by which authority may be conferred, providing:

6

The authority of the representative may be conferred by law, by contract, such as mandate or partnership, or by the unilateral juridical act of procuration.

We address each of these methods of representation in turn.

With regard to procuration, La.Civ.Code art. 2987 states:

A procuration is a unilateral juridical act by which a person, the principal, confers authority on another person, the representative, to represent the principal in legal relations.

The procuration may be addressed to the representative or to a person with whom the representative is authorized to represent the principal in legal relations.

With regard to the form of a procuration, Comment (c) of Article 2987 advises that: "The procuration is not required to be in a particular form. Nevertheless, when the law prescribes a certain form for the authorized act, a procuration authorizing the act must be in the same form." The comment then references La.Civ.Code art. 2993, which will be discussed below. Finally, La.Civ.Code art. 2988 provides: "A procuration is subject to the rules governing mandate to the extent that the application of those rules is compatible with the nature of the procuration."

Importantly, if we were to find that the authority of representation in this case was conferred by procuration, we would look to the form of the procuration. In this case, a procuration would necessarily have to be in the same form as the authorized act. The authorized act in this case is waiver of UM coverage, which, according to La.R.S. 22:1406(D)(1)(a)(ii) "shall be made only on a form prescribed by the commissioner of insurance." Thus, the statute envisions the presence of a writing to waive UM coverage. Similarly, a procuration conferring authority to waive UM coverage would require that the authority be given in writing. We do not have such a writing in the present case and, accordingly, no valid procuration.

7

Thus, we turn to the another form of representation described by La.Civ.Code art. 2986, that conferred by contract. Examples of contract provided by Article 2986 are partnership or mandate. In this case, the only type of contract arguably present is that of mandate, which is defined by La.Civ.Code art. 2989, as follows:

> A mandate is a contract by which a person, the principal, confers authority on another person, the mandatary, to transact one or more affairs of the principal.

Importantly, La.Civ.Code art. 2993 indicates that:

> The contract of mandate is not required to be in any particular form.

> Nevertheless, when the law prescribes a certain form for an act, a mandate authorizing the act must be in that form.

As we discussed above, the UM waiver is required to be in writing. According to Article 2993, a contract of mandate authorizing a waiver of UM coverage must be in writing as well. As we do not have a writing between Mr. Holloway and his mother, any contract of waiver for the UM waiver is invalid.

We turn to the final method of conferring representation described in Article 2986, that conferred by law. The "Expos des Motifs"[1] attached to the Act amending

---

[1]The Expos des Motifs, placed beneath the heading of "Chapter 1. Representation," provides:

In Louisiana, as in all developed legal systems, a person may represent another in the making of a juridical act without necessarily deriving his authority from a contract of mandate.

A person may be authorized by law to represent another person. For example, a parent may represent a minor child and the curator of an absent person may represent that person. Matters of representation under governing provisions of law have not been considered in this revision.

The following Articles concern situations in which a person is authorized by a juridical act to represent another person.

Quite apart from a contract of mandate, a person may be authorized to act in the name of or on behalf of another person by a unilateral juridical act, such as a procuration [power of attorney], or by several species of nominate and innominate contracts, such as employment contracts, partnership agreements, or brokerage contracts. It would be a distortion of the law to maintain that when a person authorizes another person to act in his name or on his behalf, the legal relationship between the two is necessarily a contract of mandate. It is analytically preferable to recognize the

8

Title XV, 1997 La. Acts No. 261, § 1, cites the parent/minor child and curator/absent person relationships as examples of those relationships through which representation can arise. We do not have any of those relationships that have been created by law. Here, the mother/son relationship was that of a mother and a *major* child. Neither is this a case in which the legal relationship is that of a spouse acting alone to manage community property. *See* La.Civ.Code art. 2346. *See also Simpson v. Grimes*, 02-0869 (La.App. 3 Cir. 5/21/03), 849 So.2d 740.

As no writing exists that permits a finding of an act of procuration or mandate, and finding no representation arising through law, we conclude that, in this case, Ms. Holloway could not, without written authorization, confect a UM waiver on behalf of her son. We reach this conclusion based on the dictates of the relevant revised statute and the Civil Code, as amended by 1997 La. Acts No. 261, § 1.

*Agency and Apparent Authority*

We also address the insurer's assertion that the submissions establish that Ms. Holloway had the authority as an "agent" of her son to represent her son in waiving UM coverage. The insurer points to *McManus v. Southern United Fire Insurance*, 00-1456 (La.App. 3 Cir. 3/21/01), 801 So.2d 392, wherein a panel of this court reviewed

---

possibility of representation apart from the contract of mandate and to draft a set of simple provisions establishing principles of representation by virtue of unilateral juridical acts and contracts other than mandate. The detailed rules governing mandate may be made applicable by analogy to unilateral juridical acts and contracts that confer authority of representation. Use of the word "representation" instead of "agency" avoids confusion with common-law institutions.

A new Chapter has been appended to Title XV of Book III of the Civil Code that contains a set of provisions governing "procuration". Consistent terminology has been adopted and technical terms have been defined. One may speak of the principal or grantor of the procuration and of the representative. The reciprocal rights and duties of their parties in their internal relationship and their rights and duties toward third persons has been determined. The rules governing mandate apply to procurations, to the extent that application of those rules is compatible with procurations.

(Alterations in original.)

9

the principles of "agency" relationships, in particular, agency relationships created through apparent authority.

The concepts of agency and apparent authority were fully addressed by the Louisiana Supreme Court in *Tedesco v. Gentry Development, Inc.*, 540 So.2d 960 (La.1989). The supreme court, explained:

> Apparent authority is a doctrine by which an agent is empowered to bind his principal in a transaction with a third person when the principal has made a manifestation to the third person, or to the community of which the third person is a member, that the agent is authorized to engage in the particular transaction, although the principal has not actually delegated his authority to the agent. Restatement (Second) of Agency § 8 (1958); W. Seavey, Law of Agency § 8(D)(1968); F. Mechem, Law of Agency § 84 (4th ed. 1952); Comment, *Agency Power in Louisiana*, 40 Tul.L.Rev. 110 (1965) [hereinafter cited as Comment, Agency Power]. In an actual authority situation the principal makes the manifestation first to the agent; in an apparent authority situation the principal makes this manifestation to a third person. However, the third person has the same rights in relation to the principal under either actual or apparent authority. Further, apparent authority operates only when it is reasonable for the third person to believe the agent is authorized and the third person actually believes this. Restatement, *supra* § 8, comments a and c.
>
> *There is no express codal or statutory authority for the doctrine of apparent authority in Louisiana.* This doctrine of unprivileged agency power, however, is an important part of the modern law of agency. A. Yiannopoulos, Civil Law in the Modern World 88 (1965).

*Id*. at 963 (footnotes omitted) (emphasis added). The doctrine expressed above has been utilized and repeated throughout our jurisprudence, including subsequent cases of the Louisiana Supreme Court. *See, e.g., Indep. Fire Ins. v. Able Moving*, 94-1982 (La. 2/20/95), 650 So.2d 750; *Woodlawn Park Ltd. v. Doster Const. Co.*, 623 So.2d 645 (La.1993). *See also Venable v. U.S. Fire Ins. Co.*, 02-505 (La.App. 3 Cir. 10/30/02), 829 So.2d 1179; *McManus*, 00-1456; 801 So.2d 392. It is important to note, however, that the most recent supreme court opinion on the use of this common

10

law doctrine, and reliance on the concept of "agency" predates the 1997 revision to Title XV of the Civil Code.

In fact, comments to the various articles of Title XV indicate that the revision directly affects the concept of "agency" as it has been used in our jurisprudence.[2] As seen above, La.Civ.Code art. 2986 indicates that: "The authority of the representative may be conferred by law, by contract, such as mandate or partnership, or by the unilateral juridical act of procuration." Comment (a) to Article 2986 advises as follows:

> (a) In the Louisiana Civil Code of 1870, the words "power of attorney", "letter of attorney", "mandate", "procuration", and "agency" were used interchangeably. However, each of these words also has a technical meaning that differentiates one from another. Following the legislative technique employed in modern civil codes, in this revision, the word "mandate" applies exclusively to the "contract of mandate" whereby a person, called principal, authorizes another person, called mandatary, to transact an affair on behalf of the principal. The word "agency" has not been used in this revision, in an effort to prevent confusion with the common-law institution of agency. The words "letter of attorney" and "power of attorney" in the Louisiana Civil Code of 1870 are a translation from the French "procuration". These words connote a unilateral juridical act whereby a person, called principal, confers authority on another person to represent him in legal relations. Thus, a person may have authority to represent another person by virtue of a contract of mandate or by virtue of a unilateral juridical act.

Since the January 1, 1998 effective date of 1997 La. Acts No. 261, § 1, the Louisiana Supreme Court has not instructed the courts of this state as to whether the apparent authority doctrine of agency continues. However, our reading of the Civil Code as it now exists, and existed at the time of the attempted UM waiver, precludes the application of the apparent authority doctrine. Article 4 of the Louisiana Civil Code mandates that:

---

[2]Although the insurer urges this court to follow this circuit's previous decision in *McManus*, reference to the facts of that case do not reveal the date of the actions in question and whether they predate the revision effective January 1, 1998.

> When no rule for a particular situation can be derived from legislation or custom, the court is bound to proceed according to equity. To decide equitably, resort is made to justice, reason, and prevailing usages.

Given the revisions to Title XV and its comprehensive approach to the concepts of representation and mandate, we do not conclude that resort to the principle of apparent authority is appropriate in this case. Instead, as is seen in the discussion above, we find resolution of the case is based on the legislative expression found in the Civil Code, which now sets forth the different methods by which representation can be conferred. As stated, none of those methods were used in this case in the waiver of the UM coverage.

Louisiana Code of Civil Procedure Article 966(C)(1) indicates that summary judgment is required when the motion demonstrates that no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. In the present case, and assuming all factual inferences in favor of the insurer, we conclude that the movant has failed to demonstrate that the UM waiver was effective as a matter of law. Therefore, under Article 966(C)(1), the trial court erred in granting summary judgment in the insurer's favor. We reverse the summary judgment and remand for further proceedings.[3]

**DECREE**

---

[3]At oral arguments held on this matter, counsel for the insurer argued that, if written authorization was required for UM waiver, written authorization was also required for the insurance policy as a whole. Since no such writing existed, counsel argued, the entire policy should be found invalid. Counsel further argued that this finding would also require summary judgment and its dismissal from the suit. We note that, as this argument was raised for the first time at oral arguments, the record is incomplete in this regard. Furthermore, the issue has not been briefed. Accordingly, we do not consider this issue, leaving it to the trial court if posed following remand.

For the foregoing reasons, the summary judgment entered in favor of the insurer is reversed. The matter is remanded to the trial court for further proceedings. All costs of this appeal are assigned to the appellee, Shelter Mutual Insurance Company.

**REVERSED AND REMANDED.**