BELSOME, J.,
dissents with reasons.
|¶1 respectfully dissent from the majority’s opinion.
Here, the sole issue is whether Mr. Guard was a properly authorized legal representative for the purpose of rejecting UM coverage on behalf of PTI. Clearly he was not.
As the majority acknowledges, the rejection of UM coverage shall be made only on a form prescribed by the commissioner of insurance.[1] In Duncan v. U.S.A.A., Ins. *664 Co., 06-363, pp. 11-12 (La.11/29/06); 950 So.2d 544, 551, the Louisiana Supreme Court determined the prescribed form requires the completion of six tasks to effectuate a valid UM coverage form.[2] A properly completed UM-coverage form where the signatory rejected coverage creates a rebuttable presumption that the insured knowingly rejected UM coverage. La. Rev.Stat. § |⅞22:1295. Failure to complete the six tasks on the form prescribed by the commissioner of insurance invalidates the UM waiver. Gray v. American Nat’l Prop. & Cas. Co., 07-1670, p. 14 (La.2/26/08); 977 So.2d 839, 849.
The facts of this case are not in dispute. The parties agree that Mr. Guard was not employed by PTI and never had written authority to act as PTI’s legal representative. Thus, the question to be resolved is whether Mr. Guard could act as PTI’s legal representative without written authority.
The majority interprets the words “legal representative” in La. R.S. 22:1295(l)(a)(ii) to mean an “individual” authorized on behalf of an entity. The majority finds that PTI verbally gave Mr. Guard legal authority to reject UM coverage and there is no Louisiana law which requires an entity to formally designate, in writing, a legal representative that has the authority to decline UM coverage. To support its conclusion that corporate formalities need not be met, the majority misapplies Riggins v. Dixie Shoring Co., Inc., 511 So.2d 1060 (La.App. 4 Cir.1991), rev’d, 590 So.2d 1164 (La.1991), as Riggins involved the discussion of corporate formalities as it related to piercing the corporate veil. That is not the issue here.
We must resolve this issue by reference to the UM coverage statute and the requirements for its waiver together with the Louisiana Civil Code articles addressing Representation and Mandate, Title XV.
La. Civ.Code art. 2985 provides that “[a] person may represent another person in legal relations as provided by law or by juridical act. This is called representation.” La. Civ.Code art. 2986 provides that “[t]he authority of the representative may be conferred by law, by contract, such as mandate or partnership, or by unilateral act of procuration.” In this case, Mr. Guard’s authority to act on behalf of PTI can only be construed as representation by mandate. La. Civ.Code art. 2989 provides “[a] mandate is a contract by which a [ ^person, the principal, confers authority on another person, the mandatary, to transact one or more affairs of the principal.” By affidavit Mr. Guard stated that he was given the authority to sign all insurance forms for PTI, particularly the UM coverage form; and, by deposition testimony, Mr. Guard stated this authority was given to him orally by Mr. Romain.
La. Civ.Code art. 2993 states that a contract of mandate does not have to be in a specific form; however, when the law re *665 quires a certain form for an act, the mandate authorizing the act must be in that form. The rejection of UM coverage must be in writing, therefore, according to art. 2993, a contract of mandate authorizing a rejection of UM coverage must be in writing as well. State v. Holloway, 03-896, p. 8 (La.App. 3 Cir. 12/10/03), 861 So.2d 763, 768, writ denied, 869 So.2d 854 (La.3/19/04). Since there was no writing purporting to give Mr. Guard the authority to act as PTI’s legal representative, any rejection of UM coverage by Mr. Guard on behalf of PTI is invalid. Thus, the insurer failed to properly complete Duncan task # 4, signing the name of the insured or legal representative.
The majority incorrectly finds that its opinion is consistent with Harper v. Direct Gen. Ins. Co., 08-2874 (La.2/13/09); 2 So.3d 418, and Banquer v. Guidroz, 09-466 (La.5/15/09); 8 So.3d 559. In Harper and Banquer, the Court was concerned with the completion of task # 3, printing the name of the named insured or legal representative, and task # 4, signing the name of the named insured or legal representative. Harper, 08-2874 at p. 3, 2 So.3d at 420; Banquer, 09-466 at p. 4, 8 So.3d at 561. In both cases, the purported UM insurer, established through an affidavit that the signature on the UM waiver form at issue was signed by legal representatives that were employees of the insured. Harper, 08-2874 at p. 1, 2 So.3d at 419; Banquer, 09-466 at p. 3, 8 So.3d at 561. In both cases, the Louisiana Supreme Court held “as long as the name of the named insured is printed and the Llegal representative signs the form, [the tasks described in Duncan as task # 3 and task # 4] are satisfied.” Banquer, 09-466 at p. 4, 8 So.3d at 562 (quoting Harper, 08-2874 at p. 3, 2 So.3d at 420). I find that there is a glaring distinction between the issue presented in Banquer and Harper and the issue in this matter. In Harper, the Court was concerned with the validity of the UM coverage form where the legal representative did not identify his representative capacity on the form. Harper, 08-2874 at p. 1, 2 So.3d at 419. In Banquer, the Court was concerned with the validity of the UM coverage form where the legal representative did not print his name as the insured but put his signature- in the blank for the insured’s signature. Banquer, 09-466 at p. 3, 8 So.3d at 561. Here, the issue involves the validity of the UM coverage form where the form’s signatory had no valid legal authority to sign.
Given the clear statutory language and considering the strong public policy favoring UM coverage, I conclude that the insurer, ACE, has failed to demonstrate that the rejection of ÜM coverage was valid as a matter of law. Thus, I find the trial court erred in granting summary judgment in the insurer’s favor.
I would reverse and remand for further proceedings.

. La.Rev.Stat. § 22:1295(l)(a)(ii) provides in pertinent part:
Such rejection, selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance. The prescribed form shall be provided by the insurer and signed by the named insured or his legal representative. The form signed by the named insured or his legal representative which initially rejects such coverage, selects lower limits, or selects economic-only coverage shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto. A properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage,
*664 selected a lower limit, or selected economic-only coverage. The form signed by the insured or his legal representative which initially rejects coverage, selects lower limits, or selects economic-only coverage.shall remain valid for the life of the policy and shall not require the completion of a new selection form when a renewal, reinstatement, substitute, or amended policy is issued to the same named insured by the same insurer or any of its affiliates.

. The six tasks are: (1) initialing the selection or rejection of coverage chosen; (2) if limits lower than the policy limits are chosen (available in options 2 and 4), then filling in the amount of coverage selected for each person and each accident: (3) printing the name of the named insured or legal representative; (4) signing the name of the named insured or legal representative; (5) filling in the policy number; and (6) filling in the date. (Emphasis added.) Duncan, supra.