STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

20-404

JOHNNY CARVAL HAVARD

VERSUS

RICKY JEANLOUIS, ET AL.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20181583
HONORABLE PATRICK L. MICHOT, DISTRICT JUDGE

**********

JOHN E. CONERY
JUDGE

**********

Court composed of Sylvia R. Cooks, Chief Judge, Shannon J. Gremillion, John E. Conery, Sharon Darville Wilson, and Charles G. Fitzgerald, Judges.

Gremillion, J. dissents and assigns reasons.

REVERSED AND REMANDED.

**Philip C. Kobetz**
**Philip C. Kobetz, LTD.**
**120 Representative Row**
**Post Office Box 80275**
**Lafayette, LA 70598**
**(337) 291-1990**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     **Johnny Carval Havard**

**Jean E. Lavidalie, Jr.**
**Guy D. Perrier**
**Perrier & Lacoste, LLC**
**365 Canal Street, Suite 2550**
**New Orleans, LA 70130**
**(504) 212-8820**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **State National Insurance Company, Inc.**

**Floyd A. Buras, III**
**Law Office of Jazmine A. Duarte**
**4000 South Sherwood Forest Blvd, Suite 403**
**Baton Rouge, LA 70816**
**(225) 368-1494**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **GEICO Casualty Company**

**CONERY, Judge.**

Plaintiff Johnny Carval Havard sought recovery under his employer's underinsured/uninsured motorist coverage following a work-related automobile accident. The insurer, State National Insurance Company, Inc. (State National), filed a motion for summary judgment, producing a purported UM waiver form. Plaintiff challenged the validity of the form, noting that, in part, the form contained a stamped signature rather than one by hand. The trial court found in favor of State National, entering summary judgment and dismissing Plaintiff's claims against the insurer. Plaintiff appeals. For the following reasons, we reverse and remand.

## FACTS AND PROCEDURAL BACKGROUND

Plaintiff filed the petition instituting this matter following a March 23, 2017 automobile accident in which a Ford Expedition driven by Rick Jeanlouis struck a portion of Plaintiff's tow truck, causing injury to him. The tow truck was owned by Plaintiff's employer, Rick's Towing & Recovery Services, Inc. (Rick's Towing).

Seeking damages associated with physical injury and earnings loss,[1] Plaintiff named Mr. Jeanlouis and his insurer, GEICO Casualty Company, as defendants and alleged that Mr. Jeanlouis caused the accident by crossing onto the shoulder of the highway where Plaintiff was working. Alleging that his damages exceeded those of the GEICO policy, Plaintiff also named State National as a defendant in its capacity as Rick's Towing's uninsured/underinsured motor coverage provider.

State National filed a motion for summary judgment, contending that Rick's Towing had completed a valid UM waiver form and that its policy did not, therefore, provide UM coverage for Plaintiff's accident. It presented the UM waiver form in support of its motion, along with the affidavit of Rick's Towing's owner, Richard Baker, and that of Mr. Baker's Administrative Assistant, Vickie

---

[1] Alleging intoxication as a factor in the accident, Plaintiff also sought punitive damages.

d'Augereaux. Ms. d'Augereaux explained therein that she completed the UM waiver on Mr. Baker's behalf and at his direction. In his own affidavit, Mr. Baker confirmed that he had authorized and directed Ms. d'Augereaux to reject UM coverage and that she did so with his consent. In opposition, Plaintiff challenged the effectiveness of the UM waiver form, asserting that Ms. d'Augereaux's completion of the form was invalid in light of the tasks delineated in *Duncan v. U.S.A.A. Insurance Co.*, 06-363 (La. 11/29/06), 950 So.2d 544 and its progeny.

Following a February 2020 hearing, the trial court granted summary judgment in favor of State National. Plaintiff appeals and assigns as error:

1. The trial court erred in granting the motion for summary judgment filed by State National Insurance Company, Inc., dismissing that insurer from this case, and finding that State National did not provide uninsured motorist insurance coverage for and on behalf of the plaintiff for the accident made the basis of this lawsuit.

## LAW AND DISCUSSION

*Summary Judgment*

Louisiana Code of Civil Procedure Article 966(A)(2) provides that the summary judgment procedure is favored and must be construed to accomplish its purpose of "the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969." Article 966(A)(3) further instructs that the "motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law."

When the issue presented by the motion for summary judgment is one on which the movant will bear the burden of proof at trial, the burden of showing that there is no genuine issue of material fact is on the moving party. La.Code Civ.P. art. 966(D)(1). The adverse party must then "produce factual support sufficient to

establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." *Id.*

In this case, State National attempts to avoid coverage through a purported waiver of the statutorily required UM coverage. The supreme court has explained that it is the insurer's burden of proving that its insured rejected, in writing, UM coverage or that it selected lower limits. *Gray v. American Nat'l Prop. & Cas. Co.*, 07-1670 (La. 2/26/08), 977 So.2d 839. Accordingly, as the non-moving party, Plaintiff was required in opposition only "to point out to the court the absence of actual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." La.Code Civ.P. art. 966(D)(1).

The trial court granted summary judgment in favor of State National, a ruling we review under the de novo standard. *See Higgins v. Louisiana Farm Bureau Cas. Ins. Co.*, 20-1094 (La. 3/24/21), _ So.3d _ (2021 WL 1115393). Having done so under the same criteria guiding the trial court, we find that State National did not meet its burden of proving the valid waiver of UM coverage for summary judgment purposes.

*Uninsured/Underinsured Motorist Coverage*

Under La.R.S. 22:1295(1)(a)(i), all automobile liability insurance policies delivered or issued in the state "and arising out of ownership, maintenance, or use of a motor vehicle … designed for use on public highways and required to be registered in this state" must provide coverage not less than the policy's bodily injury liability "under provisions filed with and approved by the commissioner of insurance, for the protection of persons issued thereunder who are legally entitled

3

to recover nonpunitive damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death resulting therefrom[.]" This statutory provision reflects a strong public policy of allowing innocent automobile accident victims to fully recover their damages from their UM motorist coverage when their injuries are caused by a tortfeasor who is not adequately covered by liability insurance. *Duncan*, 950 So.2d 544. *See also Higgins*, _ So.3d _; *Cutsinger v. Redfern*, 08-2607 (La. 5/22/09), 12 So.3d 945.

Louisiana Revised Statutes 22:1295(1)(a)(i) (emphasis added) further provides, however, for a waiver of that statutorily-mandated coverage "*when any insured named in the policy either rejects coverage*, selects lower limits, or selects economic-only coverage, in the manner provided in Item (1)(a)(ii) of this Section." Generally describing the requirements for such a waiver, La.R.S. 22:1295(1)(a)(ii) (emphasis added) provides:

> (ii) *Such rejection, selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance. The prescribed form shall be provided by the insurer and signed by the named insured or his legal representative.* The form signed by the named insured or his legal representative which initially rejects such coverage, selects lower limits, or selects economic-only coverage shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto. *A properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage ….*

In *Duncan*, 950 So.2d at 552, the supreme court further set forth the criteria used to determine whether a UM waiver meets the formal requirements of law, explaining:

> The insured initials the selection or rejection chosen to indicate that the decision was made by the insured. If lower limits are selected, then the lower limits are entered on the form to denote the exact limits. The insured or the legal representative signs the form evidencing the

4

intent to waive UM coverage and includes his or her printed name to identify the signature. Moreover, the insured dates the form to determine the effective date of the UM waiver. Likewise, the form includes the policy number to demonstrate which policy it refers to. Thus, the policy number is relevant to the determination of whether the insured waived UM coverage for the particular policy at issue.

In support of its motion for summary judgment, State National presented the June 30, 2016 UM waiver form at issue, bearing the initials "RCG" next to the selection indicating "I do not want UMBI Coverage. I understand that I will not be compensated through UMBI coverage for losses arising from an accident caused by an uninsured/underinsured motorist." The form's requirement of a "Signature of Named Insured or Legal Representative" bears the stamped signature of Richard C. Baker, the owner and president of Rick's Towing. "Richard C. Baker" is further printed on the appropriate space underneath that stamped signature.

Acknowledging that the signature was stamped and completed by Administrative Assistant d'Augereaux, State National nonetheless argues that it constitutes a valid UM waiver form. In support of its position, State National presented Ms. d'Augereaux's affidavit wherein she described her long-time role as Mr. Baker's assistant and his instruction to her with regard to the UM waiver at issue as follows:

5. On June 30, 2016, Mr. Richard C. Baker asked me to reject the UMBI Coverage on behalf of Rick's Towing & Recovery Service, Inc.

6. On June 30, 2016, I initialed the option rejecting the UMBI Coverage on behalf of Rick's Towing & Recovery Service, Inc.

7. On June 30, 2016, I stamp-signed the attached Uninsured/Underinsured Motorist Bodily Injury Coverage Form.

8. On June 30, 2016, I stamp-signed the attached Uninsured/Underinsured Motorist Bodily Injury Coverage Form.

5

9. On June 30, 2016, I printed Richard C. Baker's name in the attached Uninsured/Underinsured Motorist Bodily Injury Coverage Form underneath the stamp signature.

10. On June 30, 2016, I dated the signed Uninsured/Underinsured Motorist Bodily Injury Coverage Form underneath the stamp signature.

11. I stamp-signed the attached Uninsured/Underinsured Motorist Bodily Injury Coverage Form on behalf of Richard C. Baker as the representative (Owner and President of) for Rick's Towing & Recovery Service, Inc.

12. I signed the attached Uninsured/Underinsured Motorist Bodily Injury Coverage Form with the consent of Richard C. Baker as the representative for Rick's Towing & Recovery Service, Inc.

13. Rick's Towing & Recovery Service, Inc. intended to reject UM Coverage on June 30, 2016.

Mr. Baker echoed that conveyance of authority in his own affidavit, explaining:

4. As the Owner and President of Rick's Towing & Recovery Service, Inc., I make the final determination as to what insurance coverage to get for Rick's Towing & Recovery Service, Inc.

5. On or about June 30, 2016, I made the decision to reject UMBI Coverage under the Policy issued by State National Insurance Company, Inc. to Rick's Towing & Recovery Service, Inc.

6. On June 30, 2016, I authorized Rick's Towing & Recovery Service, Inc.'s Administrator Assistant, Ms. Vickie d'Augereaux to reject UMBI Coverage in the attached Uninsured/Underinsured Motorist Bodily Injury Coverage Form.

7. On June 30, 2016, I authorized Rick's Towing & Recovery Service, Inc.'s Administrator Assistant, Ms. Vickie d'Augereaux to stamp-sign the attached Uninsured/Underinsured Motorist Bodily Injury Coverage Form.

8. On June 30, 2016, I authorized Rick's Towing & Recovery Service, Inc.'s Administrator Assistant, Ms. Vickie d'Augereaux to stamp-sign the attached Uninsured/Underinsured Motorist Bodily Injury Coverage Form.

9.  On June 30, 2016, Ms. Vickie d'Augereaux had the full authority from Rick's Towing & Recovery Service, Inc. to fill out the attached Uninsured/Underinsured Motorist Bodily Injury Coverage Form and reject the UMBI Coverage.

10. The stamp-signature in the attached Uninsured/Underinsured Motorist Bodily Injury Coverage Form is my stamp-signature and it was stamped with my consent and approval.

11. Rick's Towing & Recovery Service, Inc. intended to reject UM Coverage.

Plaintiff maintained in opposition that State National failed to demonstrate the validity of the waiver in three respects. First, Plaintiff asserted that the form was effectively not "signed," noting the affidavits' admission that Mr. Baker's "signature" was completed by the affixing of a rubber printing stamp that "bore a likeness of Mr. Baker's signature." Plaintiff pointed out that "Ms. d'Augereaux neither signed her own name, the name of Mr. Baker, or anyone else's name on the U/M waiver form." Recalling the dictates of *Duncan*, Plaintiff explains that Ms. d'Augereaux's actions in affixing the stamp of Mr. Baker's signature and her printing of his initials failed to comply with the requirements for a valid waiver.

Second, Plaintiff alternatively argued that even if the use of a rubber stamp constitutes a "signature," it is not that of the person who "signed" the document. Plaintiff contends that, although Mr. Baker authorized Ms. d'Aguereaux to do so, there is no indication that she was the "legal representative" of Rick's Towing and, even in that event, she did not sign in that capacity or in her own name. Neither did she indicate any representative capacity on the form.[2] Further, Plaintiff

---

[2] Plaintiff asserted in his opposition, as he continues to do on appeal, that:

Clearly, had Ms. d'Augereaux signed Richard Baker's name to the U/M form (as opposed to using the rubber printing stamp), the signature would have been invalid, absen[t] evidence of a written power of attorney from Richard Baker, authorizing her to sign his name to the U/M waiver form. The same would hold true if this Honorable Court holds that a rubber printing stamp constitutes a signature. In order for Ms. d'Augereaux to validly reject U/M coverage in this case by signing Richard Baker's name on the U/M form, she would have had to be authorized to do so in writing.

7

maintains that in order for Ms. d'Augereaux to have validly rejected UM coverage by signing Mr. Baker's name, "she would have had to be authorized to do so in writing." *Citing Holloway v. Shelter Mut. Ins. Co.*, 03-896 (La.App. 3 Cir. 12/10/03), 861 So.2d 763, *writ denied*, 04-87 (La. 3/19/04), 869 So.2d 854.

In a final alternative, Plaintiff contends that the UM waiver was not valid as it does not indicate "that the stamped signature was in a representative capacity for the company[.]" It instead contains only the stamped signature and printed name of "Richard C. Baker[,]" with no indication of Mr. Baker's representative capacity. *Citing, in part, Johnson v. Folse*, 07-1031 (La.App. 5 Cir. 5/27/08), 986 So.2d 110; *writ denied*, 08-1377 (La. 9/26/08), 992 So.2d 991; *Cohn v. State Farm Mut. Auto. Ins. Co.*, 03-2820 (La.App. 1 Cir. 2/11/05), 895 So.2d 600, *writ denied*, 05-1000 (La. 6/17/05), 904 So.2d 705. Conceding that in the event a company representative is the policy's named insured, that signature will be valid despite a lack of indication of the representative status on the form, Plaintiff pointed out that "Richard C. Baker" is not a named insured. *Citing Lee v. Naquin*, 05-606 (La.App. 5 Cir. 2/3/06), 924 So.2d 200.

On consideration of these points, we find that State National failed to carry its burden of proving, as a matter of law, that coverage was excluded due to a valid UM coverage waiver. Both La.R.S. 22:1295 and *Duncan* and its progeny mandate that the waiver bear a "signature." State National correctly points out that, albeit not in a UM context, the supreme court has indicated that "where a statute requires a signature, a printed or typed 'signature' is sufficient provided the signature was authorized and intended to constitute the signature." *Rainey v. Entergy Gulf States, Inc.*, 09-572, p. 15 (La. 3/16/10), 35 So.3d 215, 225 (citing *Reno v. Travelers Home & Marine Ins. Co.*, 02-2637 (La.App. 1 Cir. 11/7/03), 867 So.2d 751). Pertinent here, *Rainey* further provides that "[i]n the absence of a statute

8

prescribing the method of affixing a signature, it may be written by hand, printed, stamped, typewritten, engraved, or by various other means." *Rainey*, 35 So.3d at 226. While neither the legislature nor the supreme court has defined "signed" as it relates to a rejection of UM coverage, the supreme court has nonetheless explained that the UM statute is to be liberally construed with exceptions to coverage strictly interpreted. *Higgins*, _ So.3d _; *Duncan*, 950 So.2d 544. *See also Stall v. Mercury Ins. Co. of Fla.*, 17-439 (La.App. 3 Cir. 12/28/17), 237 So.3d 44, *writ denied*, 18-629 (La. 8/31/18), 251 So.3d 416.

As for the question of whether a written power of attorney was required for Ms. d'Augereaux to sign on behalf of Baker, Plaintiff contends that this case is analogous to that in *Holloway*, 861 So.2d 763, where a mother signed a UM waiver form on behalf of her adult son, who was deceased when the lawsuit was filed. Ms. Holloway explained by affidavit that she had full and complete authority to execute the waiver on her son's behalf and that she did so by completing the form in his name. Reasoning from codal principles, the panel explained that, as a UM waiver was required to be in writing, an authorization to waive UM coverage as a representative of another was required to be in writing as well. *Id.* (citing La.Civ.Code arts. 2985, 2986, 2987, 2989, and 2993).

Finding no such writing, the *Holloway* panel rejected the insurer's claim of a valid waiver, setting forth the codal basis for its ruling. It first referenced La.Civ.Code art. 2985's broad provision for "representation," indicating that: "A person may represent another person in legal relations as provided by law or by juridical act." *See Holloway*, 861 So.2d at 767. Further, "[t]he authority of the representative may be conferred by law, by contract, such as mandate or partnership, or by the unilateral juridical act of procuration." La.Civ.Code art.

9

2986. As in this case, the authority of representation in *Holloway* was not provided by law as the relationship at issue was one of mother/major child.

Had the authority of representation in *Holloway* been conferred by procuration, the panel explained, its form would necessarily be considered as La.Civ.Code art. 2987, cmt. (c) provides that: "The procuration is not required to be in a particular form. *Nevertheless, when the law prescribes a certain form for the authorized act, a procuration authorizing the act must be in the same form.*" (Emphasis added.)

Louisiana Civil Code Article 2988 further explains that "[a] procuration is subject to the rules governing mandate to the extent that the application of those rules is compatible with the nature of the procuration." As applicable to both *Holloway* and this case, La.Civ.Code art. 2993 provides for the "form" of any such mandate as follows:

> The contract of mandate is not required to be in any particular form.
>
> *Nevertheless, when the law prescribes a certain form for an act, a mandate authorizing the act must be in that form.*

Observing that the UM waiver must be in written form, the *Holloway* panel explained that pursuant "to Article 2993, a contract of mandate authorizing a waiver of UM coverage must be in writing as well." *Holloway*, 861 So.2d at 768 (citing, in part, La.Civ.Code art. 2986).

State National argues that *Holloway* is inapplicable here as it involved individuals rather than a corporate setting. In contrast to an individual, State National maintains, a legal entity such as Rick's Towing must act through its legal representatives and that such a commemoration does not need to be reflected on the form. It specifically relies on *Bergeron v. Liberty Mutual Insurance Co.*, 12-86 (La.App. 3 Cir. 6/6/12), 92 So.3d 645, *writ denied*, 12-1538 (La. 10/12/12), 98

So.3d 873, a case arising in the business context. *See also Harper v. Direct Gen. Ins. Co.*, 08-2874 (La. 2/13/09), 2 So.3d 418; *Terrell v. Fontenot*, 11-1472 (La.App. 4 Cir. 6/27/12), 96 So.3d 658, *writ denied*, 12-2085 (La. 11/16/12), 102 So.3d 43.

In distinguishing *Holloway*, the *Bergeron* panel explained:

> However, we find that *Holloway* is distinguishable from the facts in this case, because here the insured is a corporation and the person who signed the form rejecting UM coverage is an employee of that corporation who has the authority to accept or reject insurance coverage for it. A corporation acts only through its officers, employees, and other agents. *Kevin Associates, L.L.C. v. Crawford*, 03–211 (La.1/30/04), 865 So.2d 34. In *Harper v. Direct General Insurance Company*, 08–2874, (La.2/13/09), 2 So.3d 418, and *Banquer v. Guidroz*, 09–466 (La.5/15/09), 8 So.3d 559, our supreme court recognized that when a corporation is rejecting UM coverage, the requirement that the insured or the insured's legal representative sign the form is met when an officer or employee of the corporation who has the authority to reject UM coverage signs the form. Mr. Bergeron attempts to distinguish *Harper* and *Banquer* by asserting that in those cases the court did not explicitly reach the question of whether the corporation's authorization for an officer or employee to waive UM coverage must be in writing. We reject this distinction; in this case, as in *Harper* and *Banquer*, the issue is whether the person who signed the form was authorized by the corporation to reject UM coverage.

*Bergeron*, 92 So.3d at 649.

State National adopts *Bergeron*'s reasoning but asserts that Ms. d'Augereaux was Rick's Towing's legal representative. It is this position that is fatal to State National's position. Pointedly, Ms. d'Augereaux did not complete the form in *her* name as the legal representative for Rick's Towing as did the legal representative in *Bergeron* and in *Harper*.

This case instead presents a situation where a corporate representative, Mr. Baker, directed a subordinate, Ms. d'Augereaux, to execute the waiver form in *his* capacity as corporate representative. As the mother did of the insured in *Holloway*, Ms. d'Augereaux simply affixed the "signature" of the insured/representative, doing so by stamp in this case, rather than her own. This extension of authority is

11

not commemorated in writing as would be necessary in this circumstance *See, e.g., Holloway*, 861 So.2d 763.

In the least, construing this attenuation of both signature and representation to effect a valid waiver is contrary to the leniency afforded La.R.S. 22:1295. *See Duncan*, 950 So.2d 544. Nor does validation of such derivative and undocumented representation on the face of the form strictly interpret La.R.S. 22:1295's exceptions to coverage. *Id.*

Certainly, as the supreme court explained in *Harper*, 2 So.3d at 420, "it is obvious the corporate insured cannot sign its name, but must act through its legal representative." The supreme court therefore found an insured's waiver of UM coverage valid when it included the printed name of the insured and the signature and initials of the insured's representative. That representative's authority to sign the waiver was established by affidavit. Rick's Towing, however, did not act through Mr. Baker in completing the waiver form. *See, e.g.*, *Harper*, 2 So.3d 418; *Stall*, 237 So.3d 44. Rick's Towing instead attempted to waive coverage by use of a signature stamp affixed by an undisclosed "representative" of the corporation's legal representative, Mr. Baker, and then seeks to establish that derivative representation after the fact by affidavit. That procedure is in direct contrast to the strict interpretation the supreme court has demanded of the tasks described by La.R.S. 22:1295. *See Higgins*, _ So.3d _; *Duncan*, 950 So.2d 544.

Furthermore, while the affidavits submitted in support of the motion for summary judgment reflect Rick Towing's intent to waive UM coverage, the supreme court has cautioned that the intent of the parties is not controlling as:

> The law imposes UM coverage in this state notwithstanding the language of the policy, the intentions of the parties, or the presence or absence of a premium charge or payment. Accordingly, to effect a valid rejection of the UM coverage … the insured *or his authorized representative* must expressly set forth in a single document that UM

coverage is rejected in the State of Louisiana as of a specific date in a particular policy issued or to be issued by the insurer. *A writing, regardless of the intention of the insured, of a less precise nature is insufficient to effect a valid rejection ….*

*Duncan*, 950 So.2d at 547 (emphasis added) (quoting *Roger v. Estate of Moulton*, 513 So.2d 1126, 1131-32 (La.1987). The UM waiver form, as presented by State National, is certainly "of a less precise nature" and is therefore insufficient to effect a valid rejection. *See also Barras v. Cardinal Servs., LLC*, 19-530 (La.App. 3 Cir. 4/1/20), 297 So.3d 877, *writ denied*, 20-978 (La. 11/4/20), 303 So.3d 631; *Higginbotham v. USAgencies Cas. Ins. Co., Inc.*, 17-491, p. 11 (La.App. 3 Cir. 6/13/18), 247 So.3d 916, 923 ("The intent of the parties is quite simply irrelevant where a UM form does not meet the requirements of Louisiana law[.]"), *writ denied*, 18-1217 (La. 10/29/18), 254 So.3d 1213.

Examination of State National's submissions in this case reflects that the requirements of Louisiana law have not been met. Instead of bearing the signature of the insured, or its legal representative, the form bears merely the stamp of the representative's signature as affixed by his designee without a written power of attorney authorizing her to sign his name on behalf of Rick's Towing. To inquire into this line of representation requires reflection on the intent of the insured, an inquiry that contravenes the type of clear, affirmative selection required on the face of the UM waiver form. Under these circumstances, the trial court erred in determining—as a matter of law—that Rick's Towing validly waived UM coverage. We accordingly reverse summary judgment as entered by the trial court and remand for further proceedings.

**DECREE**

For the foregoing reasons, the trial court's grant of summary judgment in favor of Defendant/Appellee, State National Insurance Company, Inc., is reversed. This matter is remanded to the trial court for further proceedings. Costs of this proceeding are assessed to State National Insurance Company, Inc.

**REVERSED AND REMANDED.**

**JOHNNY CARVAL HAVARD**

**VERSUS**

**RICKY JEANLOUIS, ET AL.**

**GREMILLION, Judge, dissents.**

The majority finds that Baker's authorization of d'Augereaux to sign the UM waiver form on his behalf is fatal because "d'Augereaux did not complete the form in *her* name as the legal representative for Rick's Towing as did the legal representative in *Bergeron* and in *Harper*." It further finds "this extension of authority is not commemorated in writing as would be necessary in this circumstance." This is where the majority's argument conflates the issue of intent to waive UM coverage with intent to allow an employee to sign on behalf of the legal representative.

The only distinguishing factor in the cases cited by the majority is that the authorized person *signed in their own name* even though there was no written authority to do so, even though they were not the legal corporate representative, but merely agents of the corporation, who had performed such duties in the past.

Unlike in *Holloway*, which involved a mother and her deceased son, the corporate representative here, Baker, is alive and able to attest to the authorization his secretary of over 20 years had to sign on his behalf. His intent to waive UM coverage is not the issue; the waiver is valid on its face as it is appropriately filled out. The only issue in this case is Baker's intent to allow d'Augereaux to sign on his behalf. "The extension of authority" referred to by the majority seems

abundantly clear since Baker went to the trouble of having a rubber stamp likeness of his signature created such that d'Augereaux could sign any number of documents on his behalf.

A secretary's signature at the directive of the legal representative of the company is an ordinary activity in the normal course of business that only requires authorization and no other formal requirements. *Bergeron v Liberty Mut. Ins. Co.,* 12-86 (La.App. 3 Cir. 6/6/12), 92 So.3d 645, *writ denied,* 12-1538 (La. 10/12/12), 98 So.3d 873. In *Bergeron*, the plaintiffs argued that the UM rejection was invalid because the employee who executed the rejection form did not have specific written authority to sign the rejection form on its behalf. The plaintiff in *Bergeron* also relied on *Holloway*, which we distinguished:

> However, we find that *Holloway* is distinguishable from the facts in this case, because here the insured is a corporation and the person who signed the form rejecting UM coverage *is an employee of that corporation* who has the authority to accept or reject insurance coverage for it. A corporation acts only through its officers, employees, and other agents. *Kevin Associates, L.L.C. v. Crawford*, 03–211 (La.1/30/04), 865 So.2d 34. In *Harper v. Direct General Insurance Company*, 08–2874, (La.2/13/09), 2 So.3d 418, and *Banquer v. Guidroz*, 09–466 (La.5/15/09), 8 So.3d 559, our supreme court recognized that when a corporation is rejecting UM coverage, the requirement that the insured or the insured's legal representative sign the form is met *when an officer or employee of the corporation who has the authority to reject UM coverage signs the form*. Mr. Bergeron attempts to distinguish *Harper* and *Banquer* by asserting that in those cases the court did not explicitly reach the question of whether the corporation's authorization for an officer or employee to waive UM coverage must be in writing. We reject this distinction; in this case, as in *Harper* and *Banquer*, *the issue is whether the person who signed the form was authorized by the corporation to reject UM coverage*.

*Id.* at 649 (emphasis added).

Baker is the legal representative who could sign the form. An employee authorized to sign on behalf of the legal representative, under the facts and circumstances of this corporate structure, does not require a written power of attorney. *See Harper v. Direct Gen. Ins. Co.*, 08-2874 (La. 2/13/09), 2 So.3d 418.

According to the majority's logic, if Baker had executed a written document granting d'Augereaux authority to sign business documents on his behalf, there would be no issue here. A corporate executive or employee's "authority to reject UM coverage may be established explicitly or implicitly." *Gunter v. State Farm Mut. Auto. Ins. Co.*, 12-562, p.1 (La. 5/4/12), 88 So.3d 444, 445. Authority to execute a UM waiver can be established by affidavit and there is no legal requirement regarding the nature of the proof required of authority for a representative to sign a UM form. *Stewart v. Edwards*, 34,435 (La.App. 2 Cir. 4/4/01), 784 So.2d 740. Because the corporation's legal representative, Baker, is able to attest to his intent to authorize d'Augereaux to sign on his behalf, unlike in *Holloway*, the issue of "derivative representation" is a non-issue.

Moreover, the majority states that "[t]o inquire into this line of representation requires reflection on the intent of the insured, an inquiry that contravenes the type of clear, affirmative selection required on the face of the UM waiver form." The statute refers to a person's intent to waive coverage, not his intent to authorize another to sign at his behest. Had d'Augereaux signed her own name as opposed to Baker's, the inquiry into her status as "legal representative" of the insured would have required the same level of evidence and discussion as in this case. And, ultimately, the affidavit of Baker affirming her designation as such would be all the proof required since a written authorization is not required by law. Therefore, I must dissent from the majority's ruling and would affirm the summary judgment granted by the trial court in favor of State National Insurance Company, Inc.